**LYNTEQ, INC., Plaintiff,**

v.

**UNITED STATES, Defendant.**

**Court No. 90–04–00175.**

United States Court of, International Trade.

June 17, 1991.

Wilkinson, Barker, Knauer & Quinn, Paul A. Lenzini, Washington, D.C., for plaintiff.

Stuart E. Gerson, Asst. Atty. Gen., Joseph I. Liebman, Atty. in Charge, International Trade Field Office, Civil Div., Commercial Litigation Branch, U.S. Dept. of Justice, Carla Garcia–Benitez (Ann M. Roesch, Atty., Office of Asst. Chief Counsel, U.S. Customs Service, of counsel), Washington, D.C., for defendant.

## OPINION

TSOUCALAS, Judge:

The instant action, designated a test case, comes before the Court pursuant to 28 U.S.C. § 1581(a) (1988), seeking reclassification of certain imported merchandise. Plaintiff, Lynteq, Inc. ("Lynteq"), challenges the United States Customs Service's ("Customs") classification of its imports of Cromophyl–L, a natural coloring agent obtained from ground marigold flower petals, under subheading 3203.00.50 of the Harmonized Tariff Schedules of the United States ("HTSUS"), a basket provision covering coloring matter of vegetable or animal origin not specially provided for, carrying a duty of 3.1% *ad val.*

The parties agree that there is no genuine issue of material fact in dispute, and have cross-moved for summary judgment pursuant to Rule 56 of the Rules of this Court. The Court concurs and, therefore, renders the following decision upon stipulated facts.

Lynteq contends that its product, imported from Mexico, should not have been encompassed by the basket provision because it is specifically provided for, under subheading 3203.00.10, HTSUS. Alternatively, plaintiff asserts classification under this subheading as a "preparation" based on one of the coloring matters specifically enumerated therein. *Memorandum of Points and Authorities in Support of Plaintiff's Motion for Summary Judgment* at 19.

Defendant, while conceding that Cromophyl–L is a derivative of marigold meal, nonetheless maintains that "[s]ubheading 3203.00.10 was only intended to include crude marigold meal, and not all coloring matter derived from the marigold plant."

*Defendant's Memorandum in Opposition to Plaintiff's Motion for Summary Judgment and in Support of Cross–Motion for Summary Judgment* at 10. Hence, Customs insists that Cromophyl–L is properly classified under item 3203.00.50, HTSUS, as coloring matter of vegetable origin not specially provided for. *Id.*

Upon consideration of the arguments advanced by the parties and review of the relevant caselaw, the Court finds that the imported merchandise constitutes a preparation based on a colorant enumerated in subheading 3203.00.10, HTSUS, and is therefore entitled to duty-free treatment as provided under that provision.

## BACKGROUND

The merchandise at issue, commercially known as "Cromophyl–L," is an aqueous natural coloring agent used exclusively by feed mills for incorporation into poultry feed to promote yellow pigmentation in chicken skin and egg yolks. *Affidavit of Robert M. Gibson in Support of Plaintiff's Motion for Summary Judgment.* Cromophyl–L is derived, through a series of chemical reactions, from the Aztec marigold flower (Tagetes erecta L.), which is naturally rich in xanthophyll, an active coloring agent. Although traditionally ground marigold petals (marigold meal) were also used as a poultry feed additive to augment the yellow coloring of chicken skin, Cromophyl–L is apparently preferred by the feed industry because it is more readily dispersed in the poultry feed. Additionally, due to the higher concentration of xanthophyll in Cromophyl–L, significantly lesser amounts are required to produce the same level of pigmentation. *Plaintiff's Statement of Material Facts as to Which No Genuine Issue Exists.*

Marigold petals are the primary component in the production of Cromophyl–L. The marigold petals are dried and ground into marigold meal. This meal then undergoes solvent extraction, a process by which marigold oleoresin is produced. Marigold oleoresin is a semi-solid substance containing, *inter alia*, xanthophyll esters, the active coloring agent in the marigold meal.

Marigold oleoresin is simply a highly concentrated marigold meal extract, *i.e.*, the molecular structure of the product remains intact. *Affidavit of Pat B. Hamilton in Support of Defendant's Motion for Summary Judgment ("Hamilton Affidavit")* at 2.

By contrast, the production of Cromophyl–L requires further processing. The molecular structure of marigold oleoresin must be altered through a process known as "saponification." "Saponification is a chemical reaction in which potassium hydroxide or sodium hydroxide is added to the oleoresin containing the xanthophyll esters, and heat is applied." *Hamilton Affidavit* at 3. This process releases the xanthophyll into its free alcohol form and separates it from the fatty acids. Once saponified, the Cromophyl–L can be made into a stable, water soluble solution that is easily dispersed into the poultry feed and is more readily absorbed by the poultry. *Id.*

## DISCUSSION

█ Customs' classification of imported merchandise is presumed to be correct. 28 U.S.C. § 2639(a)(1) (1988). The party challenging the classification must therefore shoulder the burden of proving otherwise. *Id.; Brookside Veneers, Ltd. v. United States*, 847 F.2d 786, 787 (Fed.Cir.1988), *cert. denied*, 488 U.S. 943, 109 S.Ct. 369, 102 L.Ed.2d 358 (1988). Nevertheless, once a classification is put in question, the Court must consider Customs' determination independently as well as in relation to the alternatives advanced by plaintiff. *Jarvis Clark Co. v. United States*, 733 F.2d 873, 878, *reh'g denied*, 739 F.2d 628 (Fed.Cir. 1984).

As plaintiff states, prior to enactment of the HTSUS,[1] Cromophyl–L imports, along with other chemically derived extracts, were classified under item 470.85 of the Tariff Schedules of the United States, Annotated (TSUSA), as products of vegetable origin used chiefly for coloring or tanning, not specially provided for, other than crude or processed. Conversely, marigold meal was classified under item 470.80, TSUSA, as products of vegetable origin used chiefly for coloring or tanning, not specially provided for, in crude or processed form. *See Joseph F. Hendrix a/c Productos Deshidratados de Mexico v. United States*, 82 Cust.Ct. 264 (1979).

Conversion to the HTSUS, however, modified the tariff treatment of marigold meal and other natural colorants. In various instances, as plaintiff notes, TSUS provisions encompassing crude materials and those covering further processed forms of the same materials were consolidated into a single HTSUS subheading in an attempt to streamline the tariff schedules. *E.g.*, Brazil wood, cutch, fustic, henna and safflower which were classified under item 470.10, TSUS, in crude or processed form, and under item 470.18, TSUS, in extract or further processed form, are all currently classifiable under subheading 3203.00.50, HTSUS.

As a result of the conversion to HTSUS, coloring matter of either vegetable or animal origin are now provided for in Chapter 32 of the HTSUS. The applicable provisions appear as follows:

| 3203.00 | Coloring matter of vegetable or animal origin (including dying extracts but excluding animal black), whether or not chemically defined; preparations as specified in note 3 to this chapter based on coloring matter of vegetable or animal origin: | |
|---|---|---|
| 3203.00.10 | Annato, archil, cochineal, cudbear, litmus, logwood and marigold meal ....................................... | Free |
| 3203.00.50 (1989). | Other ........................................... | 3.1% |

1. By virtue of the Omnibus Trade and Competitiveness Act of 1988, Pub.L. No. 100–418, 102 Stat. 1107, 1147 *et seq.*, Aug. 23, 1988, the Harmonized Tariff Schedules of the United States came into effect on January 1, 1989, superseding the Tariff Schedules of the United States, Annotated.

■ Lynteq first proposes that since Congress apparently chose to abandon the "crude" versus "further processed" distinction when converting to the HTSUS, it intended all forms of a product to be classified collectively regardless of its stage of development. Thus, plaintiff surmises, Cromophyl–L should be classified under subheading 3203.00.10, HTSUS, because it is simply an advanced form of one of the specified colorants. While the Court does not question Congress' intention to simplify the tariff provisions, it is not persuaded that Congress' intent necessitates plaintiff's conclusion.

The Court is most troubled with the plaintiff's depiction of Cromophyl–L as simply a furthered processed version of marigold meal. Although undeniably marigold meal is the raw material from which Cromophyl–L is derived, during the manufacturing process, it undergoes a substantial chemical transformation which significantly alters the character as well as the molecular structure of the resulting product from that of marigold meal. As this court has previously recognized, there is a point in the development of a product which can transform the product into something else. *Tomoegawa USA, Inc. v. United States,* 12 CIT 112, 681 F.Supp. 867 (1988); *All Channel Prods. Corp. v. United States,* 1 CIT 128 (1981).

In this case the resulting product, Cromophyl–L, possesses qualities so altogether different from those present in the raw material from which it is derived, that it can no longer be deemed to be marigold meal for classification purposes.

■ However, in light of the bilateral nature of Heading 3203.00, the Court's analysis cannot stop here. Heading 3203.-00, HTSUS, read in conjunction with Note 3 to Chapter 32, provides that subheadings 3203.00.10 and 3203.00.50, HTSUS, encompass not only coloring matter of animal or vegetable origin, but also preparations based thereon of a kind used for coloring

any material or used as ingredients in the manufacture of coloring preparations. Thus, if plaintiff's product constitutes a preparation based on marigold meal, it would be properly classifiable under subheading 3203.00.10, HTSUS.

Since the term "preparation" is not defined in the HTSUS, the Court will presume that Congress intended to apply its common and commercial meaning. *Brookside Veneers,* 847 F.2d at 789. To ascertain the common and commercial meaning of the term, the court may refer to dictionaries and other lexicographic authorities. *Austin Chem. Co. v. United States,* 835 F.2d 1423 (Fed.Cir.1987). A preparation has been defined as a "substance specially prepared, or made up for its appropriate use or application, *e.g.,* as food or medicine, or in the arts or sciences" and the "action or special process of putting something into proper condition for use; preparatory treatment; working or making up; dressing and serving up (*of* food); composition, manufacture (*of* a chemical, medicinal, or other substance)" by *The Oxford English Dictionary* 374 (1989). Meanwhile, *Webster's Third New International Dictionary* 1790 (1981) defines preparation as "something that is prepared: something made, equipped, or compounded for a specific purpose." Finally, *Funk & Wagnalls New Standard Dictionary of the English Language* 1957 (1943) defines the term as "[s]omething made or prepared, especially a compound, concoction, or composition; as, medicinal or chemical *preparations.*"

Moreover, this court long ago established the definition of a "preparation" in *United States v. P. John Hanrahan, Inc.,* 45 CCPA 120 (1958). Therein, the court explained that "where the imported merchandise is a distinct and recognized article of commerce, having an individual name, and which is produced from a raw material by a definite series of steps, said merchandise is a preparation." *Id.* at 122.

354

The merchandise at issue embodies precisely the type of product for which this description was intended. Cromophyl–L is clearly produced from the raw material, *i.e.*, marigold meal, by a definite series of steps. Thus, while not comparable to marigold meal, the imported merchandise constitutes a "preparation" within the common meaning of that term.

Thus, while it is well established in this court that Customs' classifications enjoy a presumption of correctness, plaintiff has clearly overcome that presumption in this instance. For Customs classification purposes, Cromophyl–L is a preparation based on marigold meal and, as such, is properly classified under subheading 3203.00.10, HTSUS. Judgment shall be entered accordingly.

## JUDGMENT

This case having been duly submitted for decision and the Court, after due deliberation, having rendered a decision herein; now in conformity with said decision,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED: that plaintiff's motion for summary judgment is granted; and defendant's cross-motion for summary judgment is denied.

IT IS FURTHER ORDERED, ADJUDGED, and DECREED: that Customs shall reclassify the subject merchandise in accordance with the aforementioned decision and shall refund any excess duties paid with interest in accordance with law.