**LYNTEQ, INC., Plaintiff–Appellee,**

v.

**The UNITED STATES, Defendant–Appellant.**

**No. 92–1064.**

United States Court of Appeals, Federal Circuit.

Sept. 23, 1992.

Rehearing Denied Oct. 28, 1992.

Paul A. Lenzini, Wilkinson, Barker, Knauer & Quinn, Washington, D.C., argued, for plaintiff-appellee.

Carla Garcia–Benitez, Commercial Litigation Branch, Dept. of Justice, New York City, argued, for defendant-appellant. With her on the brief were Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director and Joseph I. Liebman, Atty. in Charge, Intern. Trade Field Office.

Patrick D. Gill, Rode & Qualey, New York City, was on the brief, for amicus curiae, Kemin Industries, Inc., of counsel was Eleanore Kelly–Kobayashi.

Before MICHEL, LOURIE, and CLEVENGER, Circuit Judges.

LOURIE, Circuit Judge.

The United States appeals from the judgment of the United States Court of International Trade granting summary judgment in favor of Lynteq, Inc., on Lynteq's challenge of a classification decision by the United States Customs Service. *Lynteq, Inc. v. United States*, 768 F.Supp. 350 (Ct. Int'l Trade 1991). The trial court held that the imported merchandise is a preparation of marigold meal that is properly classified under subheading 3203.00.10, Harmonized Tariff Schedules of the United States (HTSUS), and is thus entitled to duty-free treatment. We reverse and hold that the imported merchandise is properly classified under subheading 3203.00.50, HTSUS, dutiable at 3.1% *ad valorem*.

## BACKGROUND

The merchandise at issue, known by its trade name "Cromophyl–L," was imported into the United States and sold by Lynteq to poultry feedmills for incorporation into poultry feed for the purpose of enhancing the yellow color of chicken skin and egg yolks. Cromophyl–L is an aqueous extract of the dried ground flower petals of Aztec marigold flowers which are a naturally rich source of xanthophyll pigment, an active coloring agent.[1] The petals are pressed, dried, and ground to obtain marigold meal. The marigold meal then undergoes a solvent extraction process that separates xanthophyll esters from the meal and produces marigold oleoresin, a semi-liquid substance comprised of xanthophyll esters, vegetable fats, and other oil-soluble materials. The solvent extraction process does not change the chemical structure of the xanthophyll esters.

Chromophyl–L is derived from the marigold oleoresin through a process known as "saponification." The saponification process releases the xanthophyll free alcohol by separating it from the fatty acids to

1. Approximately ninety-four percent of the xanthophyll present in the marigold flower exists in the form of xanthophyll esters comprised of two fatty acid molecules condensed with the two alcohol groups of the xanthophyll molecule.

which it was originally attached. The liberated xanthophyll can then be formulated into a stable, water-based solution, known commercially as Cromophyl–L. Although marigold meal may· be used as a color-enhancing poultry feed additive, Cromophyl–L is preferred because it is, among other things, more stable than marigold meal, easier to incorporate into the poultry feed, and more readily absorbed by the poultry.

The applicable provisions of the Harmonized Tariff Schedule of the United States are as follows:

Heading 3203.00 Coloring matter of vegetable or animal origin (including dyeing extracts but excluding animal black), whether or not chemically defined; preparations as specified in note 3 to this chapter based on coloring matter of vegetable or animal origin:

Subheading 3203.00.10 Annato, archil, cochineal, cudbear, litmus, logwood and **marigold meal**...................................Free

Subheading 3203.00.50 Other .........................................3.1%

---

(codified at 19 U.S.C. § 1202 (1988)) (emphasis added).

On July 7, 1989, the imported merchandise was liquidated by Customs at a duty of 3.1% *ad valorem* under subheading 3203.00.50, HTSUS, a residual provision covering "other" coloring matter of vegetable or animal origin. Lynteq filed a timely protest under 19 U.S.C. § 1514 (1988) challenging Customs' classification decision. Upon denial of the protest, Lynteq commenced an action before the Court of International Trade pursuant to 28 U.S.C. § 2631(a) (1988). Lynteq alleged that the imported merchandise was improperly classified by Customs under subheading 3203.-00.50 because the merchandise is specifically provided for under subheading 3203.00.-10, HTSUS, as a form of one of the enumerated coloring matters of vegetable or animal origin, *viz.*, marigold meal, and thus should have been liquidated free of duty. Alternatively, Lynteq claimed that the merchandise is properly classified under subheading 3203.00.10 as a "preparation" based on marigold meal.

Before the trial court, Lynteq and the Government agreed that there were no genuine issues of material fact in dispute and the parties filed cross motions for summary judgment. The trial court rejected Lynteq's contention that Cromophyl–L was merely a refined form of the enumerated colorant marigold meal. The court determined that in deriving Cromophyl–L from the marigold meal, the raw material "undergoes a substantial chemical transformation which significantly alters the character as well as the molecular structure of the resulting product from that of marigold meal." 768 F.Supp. at 353. Further, the court found that Cromophyl–L "possesses qualities so altogether different from those present in the raw material from which it is derived, that it can no longer be deemed to be marigold meal for classification purposes." *Id.* at 353.

However, the trial court concluded that the scope of subheadings 3203.00.10 and 3203.00.50 encompasses not only the enumerated coloring matter, but also preparations based on those colorants as well:

Heading 3203.00, HTSUS, read in conjunction with Note 3 to Chapter 32, provides that subheadings 3203.00.10 and 3203.00.50, HTSUS, encompass not only coloring matter of animal or vegetable origin, but also preparations based thereon of a kind used for coloring any material or used as ingredients in the manufacture of coloring preparations.

768 F.Supp. at 353. The trial court then determined that the imported merchandise constitutes a "preparation" based on marigold meal and as such is properly classified under subheading 3203.00.10 and entitled to duty-free treatment. Consequently, the trial court granted Lynteq's motion for summary judgment. On appeal, the Government claims that the trial court erred as

a matter of law in holding that the imported merchandise was classifiable under subheading 3203.00.10, entering duty-free, and not under subheading 3203.00.50, dutiable at 3.1% *ad valorem*.

## DISCUSSION

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1295(a)(5) (1988). We review the Court of International Trade's grant of summary judgment for correctness as a matter of law, deciding *de novo* the proper interpretation of the governing statutory provisions. *Guess? Inc. v. United States*, 944 F.2d 855, 857 (Fed.Cir.1991). The ultimate issue as to whether particular merchandise has been classified under an appropriate tariff provision necessarily depends on the meaning of the terms of that provision, which is a question of law subject to *de novo* review. *See W.R. Filbin & Co. v. United States*, 945 F.2d 390, 392 (Fed.Cir.1991). Thus, we need not afford deference to the trial court's decision regarding the proper scope of subheading 3203.00.10. *See Suramerica de Aleaciones Laminadas, C.A. v. United States*, 966 F.2d 660, 663 (Fed.Cir. 1992). Customs' classification of imported merchandise is presumed to be correct, 28 U.S.C. § 2639(a)(1) (1988), and the burden of proof is upon the party challenging the classification. *Simod America Corp. v. United States*, 872 F.2d 1572, 1576, 7 Fed. Cir. (T) 82, 86 (Fed.Cir.1989).

### I. Preparations

Neither party disputes that Cromophyl–L is properly classified under heading 3203.00. Heading 3203.00 covers coloring matter of vegetable or animal origin and preparations as specified in Note 3 to Chapter 32 of the HTSUS based on coloring matter of vegetable or animal origin. Heading 3203.00 is further subdivided into subheading 3203.00.10, an *eo nomine* provision which covers certain forms of coloring matter by name, and subheading 3203.-00.50, a residual or basket provision which covers the balance of merchandise within the scope of the heading. We must thus decide which of the two subdivisions of heading 3203.00 is applicable to Cromophyl–L. Resolution of that issue necessarily entails deciding whether subheading 3203.00.10 encompasses not only the enumerated coloring matter, but preparations based on that coloring matter as well.

The trial court determined that subheadings 3203.00.10 and 3203.00.50 encompass "not only coloring matter of animal or vegetable origin, but also preparations based thereon of a kind used for coloring any material or used as ingredients in the manufacture of coloring preparations." 768 F.Supp. at 353. The trial court, however, failed to articulate any reasoning supporting that conclusion other than that it was based on the court's reading of the language of heading 3203.00 in conjunction with Note 3 to Chapter 32.[2] We conclude that the trial court's broad interpretation of the scope of subheading 3203.00.10 was erroneous.

"In determining the scope of a statute, we look first to its language. If the statutory language is unambiguous, in the absence of a 'clearly expressed legislative intent to the contrary, that language must ordinarily be regarded as conclusive.'" *United States v. Turkette*, 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981) (quoting *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980)). The language of subheading 3203.00.10 is clear and unambiguous. That *eo nomine* subheading, by its very terms, covers only coloring matter which comes within the common meaning of the items that are specifically enumerated therein: annato, archil, cochineal, cudbear, litmus, logwood, and marigold meal. *See* Rule 6, General Rules of Interpretation of the Harmonized System ("For legal purposes, the classification of goods in the subheadings of a heading shall be determined according

**2.** Explanatory Note 3 to Chapter 32 of the HTSUS states in pertinent part:

[Heading 3200] appl[ies] also to preparations based on coloring matter ... of a kind used for coloring any material or used as ingredients in the manufacture of coloring preparations.

to the terms of those subheadings and any related subheading notes....").

■ An *eo nomine* provision which does not specifically provide for preparations does not encompass preparations within its ambit. *Cf. United States v. Bruckmann,* 582 F.2d 622, 625, 65 CCPA 90 (1978) ("It is fairly well-settled law that an *eo nomine* provision which does not specifically provide for parts does not include parts."). Indeed, if Congress had intended to include Cromophyl–L or other preparations under subheading 3203.00.10, Congress could easily have done so, for example, by simply drafting the subheading so as to cover "Annato, archil, cochineal, cudbear, litmus, logwood, marigold meal and preparations based thereon." Congress did not do so and we decline to act where Congress has not. *See Denkler v. United States,* 782 F.2d 1003, 1008 (Fed.Cir.1986) ("Should Congress wish to extend the [statutory scope], it knows how to do so.").

Accordingly, all products coming within the scope of heading 3203.00, including preparations, that are not specifically enumerated in subheading 3203.00.10 are covered by the residual subheading 3203.00.50, and are thus not entitled to duty-free treatment. We cannot discern, and Lynteq has not shown, any clear contrary legislative intent compelling us to depart from the plain meaning of the unambiguous language of subheading 3203.00.10. Accordingly, we need not ascertain the proper meaning of the tariff term "preparation," nor do we need to decide whether Cromophyl–L constitutes a preparation based on marigold meal. In order for the imported merchandise to be properly classified under subheading 3203.00.10, it must come within the meaning of the term "marigold meal." As the trial court correctly determined, it does not.

## II. Marigold Meal

■ Tariff terms contained in the statutory language "are to be construed in accordance with their common and popular meaning, in the absence of contrary legislative intent." *E.M. Chemicals v. United States,* 920 F.2d 910, 913 (Fed.Cir.1990).

"To assist it in ascertaining the common meaning of a tariff term, the court may rely upon its own understanding of the terms used, and it may consult lexicographic and scientific authorities, dictionaries, and other reliable information sources." *Brookside Veneers, Ltd. v. United States,* 847 F.2d 786, 789, 6 Fed.Cir. (T) 121, 125 (Fed.Cir.), *cert. denied,* 488 U.S. 943, 109 S.Ct. 369, 102 L.Ed.2d 358 (1988). The term "marigold meal" is not defined by the HTSUS, and thus we must consult other acceptable and reliable sources of information.

■ "Marigold" refers to "a plant of the genus *Tagetes.*" *Webster's Third New International Dictionary* 1381 (1986). "Meal" is defined, *inter alia,* as: "1. the ground seeds of a cereal grass or pulse esp. when coarsely ground and unbolted and usu. excluding flour of wheat...."; and "2. the product resembling seed meal in particle size, texture, or other quality...." *Id.* at 1398. Thus, the tariff term "marigold meal" fairly refers to the product produced by the coarse grinding of the marigold plant. *Accord Joseph F. Hendrix a/c Productos Deshidratados de Mexico v. United States,* 82 Cust.Ct. 264, 267 (1979).

■ In the absence of contrary legislative intent, an *eo nomine* designation without terms of limitation includes all forms of the article. *See Hasbro Indus., Inc. v. United States,* 879 F.2d 838, 840, 7 Fed.Cir. (T) 110, 112 (Fed.Cir.1989). The record, however, is replete with evidence that Cromophyl–L is not a form of marigold meal and thus that it is beyond the scope of the common meaning of that tariff term. For example, at least 94% or more of the xanthophyll present in marigold meal exists in the form of xanthophyll esters, not xanthophyll free alcohol. In contrast, Cromophyl–L, derived from marigold meal through saponification, is an aqueous extract of xanthophyll in which 98+% of the xanthophyll is present in its free alcohol form. The inherent characteristics of Cromophyl–L (e.g. stability, aqueous form, coloring efficiency) that distinguish it from other by-products of the marigold plant make it the preferred color-enhancing food

additive in the poultry industry. Thus, we find no error in the trial court's determination that the imported merchandise "possesses qualities altogether different from those present in the raw material from which it is derived, that it can no longer be deemed to be marigold meal for classification purposes." 768 F.Supp. at 353. However, for reasons stated above, we reach a different conclusion as to the proper classification of the imported merchandise. Because we find that Cromophyl–L does not come within the meaning of the term "marigold meal," we must conclude that it is properly classified under subheading 3203.-00.50, dutiable at 3.1% *ad valorem*, and not under subheading 3203.00.10.

### III. Other Arguments

■ Having determined that the trial court erred as a matter of law in concluding that the *eo nomine* subheading 3203.10 encompasses preparations based on the specific coloring matter enumerated therein, and having determined that Cromophyl–L cannot be considered marigold meal for purposes of classification under the HTSUS, we now address Lynteq's alternative basis for supporting the trial court's judgment.

Lynteq argues that the HTSUS generally distinguishes between crude and mechanically processed vegetable materials used to manufacture coloring matter, properly subsumed under heading 1404, HTSUS, and the coloring matter derived therefrom, properly subsumed under heading 3203. The Explanatory Notes, Lynteq contends, indicate that heading 3203 is intended to cover extracts of coloring matter of vegeta-

ble or animal origin and preparations based thereon, and not the crude forms thereof, which Lynteq claims are provided for elsewhere in the HTSUS, *viz.*, heading 1404.[3]

Specifically, Lynteq asserts that marigold meal in its crude vegetable·form is properly classified under subheading 1404.-10.00, and that subheading 3203.00.10 must cover extracts of and preparations based on marigold meal. Lynteq bases that assertion on the language contained in the Explanatory Notes to heading 1404 and the legislative history of the HTSUS. Lynteq argues that in converting from the Tariff Schedules of the United States (TSUS) to the Harmonized System,[4] Congress transferred the "crude" versus "further processed" distinction of the TSUS with regard to the classification of coloring and tanning products of vegetable origin by classifying marigold meal in its crude vegetable form under subheading 1404.10.00 and extracts of and preparations based on marigold meal under subheading 3203.00.-10.

The Explanatory Notes to heading 1404 state in pertinent part:

> Raw vegetable materials of a kind used primarily in dyeing or tanning.
>
>> Such products are used primarily in dyeing or tanning either directly or in the preparation of dyeing or tanning extracts. The materials may be untreated, cleaned, dried, ground or powdered (whether or not compressed).

1 Customs Cooperation Council, *Explanatory Notes to the Harmonized Commodity Description and Coding System* 98 (1st ed. 1986). The Explanatory Notes further

**3.** The relevant tariff classification provision under heading 1404 appears in the HTSUS as follows:

Heading 1404 Vegetable products <u>not elsewhere specified or included:</u>
 Subheading 1404.10.00 Raw vegetable materials of a kind used primarily in dyeing or tanning ...................................................Free
 Canaigre, chestnut, curupay, divi-divi, eucalyptus, gall nuts, hemlock, larch, mangrove, myrobalan, oak, quebracho, sumac, tara, urunday, valonia, wattle and other materials of a kind used primarily in tanning.

(codified at 19 U.S.C. § 1202 (1988)) (emphasis added). ·

**4.** Congress approved the accession of the United States to the Convention and passed implement-

ing legislation in the Omnibus Trade and Competitiveness Act of 1988, Pub.L. No. 100–418, 102 Stat. 1107, 1148 (Aug. 23, 1988) (relevant provisions codified at 19 U.S.C. §§ 3001, 3003, 3004 (1988)). The HTSUS became effective on

specify "more important" raw vegetable materials, among which are

> Stems, stalks, leaves and flowers: stems, stalks and leaves of woad, sumac[ ], "young fustic", holly, myrtle, sunflower, henna, reseda, indigo plant; leaves of lentiscus (mastic); flowers of safflower (bastard saffron) and dyer's greenwood (*Genista tinctoria;* woadwaxen).

*Id.*

 We note that "[a]lthough generally indicative of proper interpretation of the various provisions of the [Harmonized Tariff System], the Explanatory Notes ... are not legally binding" on the United States. H.R.Conf.Rep. No. 100–576, 100th Cong., 2d Sess. 549 (1988), *reprinted in* 1988 U.S.C.C.A.N. 1547, 1582. The Explanatory Notes to heading 1404 in fact do not offer any support for Lynteq's contention that subheading 1404.10.00 covers the crude form of marigold meal and that subheading 3203.00.10 encompasses extracts and preparations thereof. Neither do we find the Explanatory Notes persuasive in light of the "legislative history" identified by Lynteq.

Lynteq's interpretation ignores the express and inherent limitations imposed on the scope of heading 1404. Chapter 14 of the HTSUS relates generally to "Vegetable Plaiting Materials" and "Vegetable Products Not Elsewhere Specified or Included," and heading 1404 specifically covers "Vegetable products not elsewhere specified or included...." Marigold meal is expressly provided for under subheading 3203.00.10 and is conspicuously absent from subheading 1404.10.00 or its Explanatory Notes. Absent clear legislative intent to the contrary, the plain meaning of the statute will prevail. *See Allied Tube & Conduit Corp. v. United States*, 898 F.2d 780, 783 (Fed. Cir.1990).

Lynteq further argues that the Government's interpretation that subheading 3203.00.10 properly covers marigold in crude vegetable form is contrary to Article 3 of the International Convention on the Harmonized Commodity Description and Coding System (Convention), which pro-vides that the United States, as an accessor or "Contracting Party" to the Convention, "shall use all the headings and subheadings of the Harmonized System without addition or modification, together with their related numerical codes[.]" Lynteq contends that any interpretation of the scope of heading 3203.00 must be consistent with the mandatory international text of that heading, which, according to Lynteq, requires extracts of and preparations based on marigold meal to be classified therein. That argument is based on the same erroneous "crude-further processed" distinction allegedly embodied in headings 3203 and 1404 which we have already rejected. Thus, we do not agree that the Government's interpretation that subheading 3203.00.10 contemplates marigold meal in its crude vegetable form is contrary to the international text of heading 3203 or is inconsistent with other tariff provisions of the HTSUS, such as subheading 1404.10.00.

## CONCLUSION

The trial court erred as a matter of law in determining that the imported merchandise is properly classified under subheading 3203.00.10, HTSUS. Accordingly, we reverse the trial court's grant of Lynteq's motion for summary judgment and we remand the case with instructions to the trial court to enter summary judgment for the Government.

## COSTS

No costs.

**REVERSED AND REMANDED.**

January 1, 1989, superseding the Tariff Sched-ules of the United States.