H. REISMAN CORP., PLAINTIFF *v.* UNITED STATES, DEFENDANT

Consolidated Court No. 92–08–00569

(Dated December 1, 1993)

*Barnes, Richardson & Colburn (Rufus E. Jarman, Jr.* and *Frederic D. Van Arnam, Jr.)* for plaintiff.

*Frank W. Hunger,* Assistant Attorney General, *Joseph I. Liebman,* Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice *(Bruce N. Stratvert), Mark G. Nackman,* Office of Assistant Chief Counsel, International Trade Litigation, United States Customs Service, of counsel, for defendant.

OPINION

RESTANI, *Judge:* This matter is before the court following a trial *de novo.* The issue to be determined is the proper classification of merchandise that provides vitamin B–12 in animal feed. The court eliminated certain classifications following trial. The court also now eliminates classification as a "medicament," as the merchandise is not used in a therapeutic or prophylactic manner beyond the purposes provided by any nutrient, including ordinary grain feed or food of any kind.[1]

The United States Customs Service ("Customs") classified the product at issue as vitamin B–12, under item 2936.26.00 of the Harmonized Tariff Schedule of the United States ("HTSUS").[2] The remaining classi-

---

[1] The product also does not appear to be "mixed" as required by item 3003.90.00 of the Harmonized Tariff Schedule of the United States (1992).

[2] The relevant tariff provisions in Chapter 29 read as follows:

| | |
|---|---|
| 2936 | Provitamins and vitamins, natural or reproduced by synthesis (including natural concentrates), derivatives thereof used primarily as vitamins, and intermixtures of the foregoing, whether or not in any solvent: |
| 2936.10.00 | Provitamins, unmixed . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . |
| | Vitamins and their derivatives, unmixed: |
| 2936.21.00 | Vitamins A and their derivatives . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . |
| 2936.22.00 | Vitamin $B_1$ (Thiamine) and its derivatives . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . |
| 2936.23.00 | Vitamin $B_2$ (Riboflavin) and its derivatives . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . |
| 2936.24.00 | D- or DL-Pantothenic acid (Vitamin $B_3$ or Vitamin $B_5$) and its derivatives . . . . . . . . . . . . . . . . . |

fications claimed by plaintiff are item 2308.90.80, other vegetable material of a kind used in animal feeding; item 2309.90.90, other preparations of a kind used in animal feeding;[3] and item 2936.90.00, other provitamins and vitamins, including natural concentrates.

FACTS

The imported merchandise is a reddish brown liquid, consisting of approximately 3% vitamin B–12 compounds, 20% proteinaceous matter, 77% water, and trace materials. Water is disregarded for purposes of classification. The merchandise is an eluate, that is, washings of a separation process, and is a colloidal suspension rather than a solution. The vitamin B–12 in the merchandise is not in crystalline form as is pure vitamin B–12 for human consumption. The vitamin B–12 in the merchandise is also not a natural concentrate.

The merchandise is the result of the fermentation of vegetable matter, essentially sugar and molasses. Such matter is transformed so completely by the processing that it has virtually nothing in common with the starting materials. The merchandise is produced as a side stream of the manufacture of crystalline vitamin B–12. It is described as the "spent broth." In order to be suitable for use in animal feed, the liquid side stream product is dehydrated and powdered. It is sometimes mixed

---

| 2936.25.00 | Vitamin $B_6$ (Pyridoxine and related compounds with Vitamin $B_6$ activity) and its derivatives .................................................................. |
| 2936.26.00 | Vitamin $B_{12}$ (Cyanocobalamin and related compounds with Vitamin $B_{12}$ activity) and its derivatives .................................................................. |
| 2936.27.00 | Vitamin C (Ascorbic acid) and its derivatives ........................................... |
| 2936.28.00 | Vitamin E (Tocopherols and related-compounds with Vitamin E activity) and its derivatives .................................................................. |
| 2936.29 | Other vitamins and their derivatives: |
| 2936.29.10 | Folic acid ....................................................................... |
| 2936.29.15 | Niacin and niacinamide ....................................................... |
| | Other: |
| 2936.29.20 | Aromatic or modified aromatic ............................................. |
| 2936.29.50 | Other ...................................................................... |
| 2936.90.00 | *Other, including natural concentrates* ...................................... |

HTSUS (1992).

[3.] The relevant tariff provisions in Chapter 23 read as follows:

| 2308 | Vegetable materials and vegetable waste, vegetable residues and byproducts, whether or not in the form of pellets, of a kind used in animal feeding, not elsewhere specified or included: |
| 2308.10.00 | Acorns and horse-chestnuts ................................................... |
| 2308.90 | Other: |
| 2308.90.30 | Screenings, scalpings, chaff or scourings, ground, or not ground, of flaxseed (linseed) ....... |
| 2308.90.50 | Dehydrated marigolds ........................................................ |
| 2308.90.80 | Other ........................................................................ |
| 2309 | Preparations of a kind used in animal feeding: |
| | Dog or cat food, put up for retail sale ...................................... |
| 2309.90 | Other: |
| 2309.90.10 | Mixed feeds or mixed feed ingredients ..................................... |
| | Other: |
| 2309.90.30 | *Animal feeds containing milk or milk derivatives* ..................................... |
| | Other. |
| 2309.90.60 | *Animal feeds containing egg* ................................................ |
| 2309.90.90 | Other ..................................................................... |

HTSUS (1992).

with ground corn cobs or rice hulls so that it may be properly distributed in animal feed premixes. It is also sold in an unmixed form. The merchandise is only suitable for use in animal feed. It is not commercially feasible to process the eluate into pure vitamin B–12. The merchandise, however, is of value only because of its vitamin B–12 content.

The vitamin B–12 portion of the product consists of two different forms of vitamin B–12: cyanocobalamin and hydroxocobalamin. Each of these is a separately defined organic chemical compound. The proteinaceous matter is another totally separate ingredient. The compounds and other ingredients are not mixed together, but are simply the result of the fermentation process. These facts are admitted or were established by essentially uncontradicted testimony at trial.

## DISCUSSION

The first question to be addressed is whether the merchandise may be classified under chapter 29, as Customs' classification and one of plaintiff's classifications are contained within that chapter. The overlying issue in this case is whether Chapter 29 covers all commercially known forms of a vitamin, or whether a more chemically oriented approach is reflected in the structure of Chapter 29. The court believes that the latter position is correct, as the following discussion indicates.

Chapter note 1 defines with great specificity the types of merchandise that are included within Chapter 29.[4] Note 1(a) allows separately chemically defined organic compounds to be classified under the chapter. As indicated, the product contains two separately defined organic chemical compounds, as well as proteinaceous material. Even if the proteinaceous material is disregarded, the product is still a combination of two separately defined organic compounds. The Explanatory Notes to the Harmonized Tariff System ("the Explanatory Notes"), in addressing Chapter 29, make clear that in order to satisfy Note 1(a), the product must be a "single chemical compound of known structure."[5] Customs Co-Operation Council, 1 Harmonized Commodity Description and Cod-

---

[4] Note 1 to Chapter 29 reads as follows:
1. Except where the context otherwise requires, the headings of this chapter apply only to:
    (a) Separate chemically defined organic compounds, whether or not containing impurities;
    (b) Mixtures of two or more isomers of the same organic compound (whether or not containing impurities), except mixtures of acyclic hydrocarbon isomers (other than stereoisomers), whether or not saturated (chapter 27);
    (c) The products of headings 2936 to 2939 or the sugar ethers and sugar esters, and their salts, of heading 2940, or the products of heading 2941, whether or not chemically defined;
    (d) Products mentioned in (a), (b) or (c) above dissolved in water;
    (e) Products mentioned in (a), (b) or (c) above dissolved in other solvents provided that the solution constitutes a normal and necessary method of putting up these products adopted solely for reasons of safety or for transport and that the solvent does not render the product particularly suitable for specific use rather than for general use;
    (f) The products mentioned in (a), (b), (c), (d) or (e) above with an added stabilizer necessary for their preservation or transport;
    (g) The products mentioned in (a), (b), (c), (d), (e) or (f) above with an added antidusting agent or a coloring or odoriferous substance added to facilitate their identification or for safety reasons, provided that the additions do not render the product particularly suitable for specific use rather than for general use;
    (h) The following products, diluted to standard strengths, for the production of azo dyes: diazonium salts, couplers used for these salts and diazotizable amines and their salts.
Note 1 to Chapter 29, HTSUS (1992).

[5] The Explanatory Notes are "generally indicative of proper interpretation of the various provisions of the [Harmonized Tariff System]." *Lynteq, Inc v. United States,* 976 F.2d 693, 699 (Fed. Cir. 1992) (quoting H.R. Conf. Rep. No. 576, 100th Cong., 2d Sess. 549 (1988), *reprinted in* 1988 U.S.C.C.A.N. 1547, 1582).

ing System, Explanatory Notes, Ch. 29, General Note A, at 326 (1988 Supp.). Thus, the product does not fit within Note 1(a). Any pure vitamin B–12 compound may be classified under Chapter 29 according to the direction of Note 1(a), but merchandise which includes two compounds is not within the purview of Note 1(a).

Further, the court recognized the inapplicability of Note 1(b) at trial. The product is clearly not a mixture of two or more isomers of the same compound. Nor is the merchandise a product of heading 2936, as specified in Note 1(c). In chemical terms a product is "a substance produced from one or more other substances as a result of chemical change." *Webster's Third New International Dictionary* 1810 (1981). (Defendant offers no contrary definition.) The imported product is not obtained by chemically altering vitamin B–12[6] or any other separately listed vitamin under heading 2936. Notes 1(d) through (g) do not apply because they require that the merchandise described therein contain an item listed in a preceding subpart of Note 1. Note 1(h) does not apply by its terms. Accordingly, the merchandise is not described in Note 1.

Note 1, however, contains an escape valve. Despite the careful cataloging of Note 1, merchandise may be classified within Chapter 29 if the "context otherwise requires" such classification. *See,* Note 1 to Chapter 29, HTSUS. The Explanatory Notes state that provitamins and vitamins (including concentrates and intermixtures) are to be classified in Chapter 29, even though they may not be separately defined chemical compounds. 1 Harmonized Commodity Description and Coding System, Explanatory Notes, Ch. 29, General Note C, at 327. The Explanatory Notes agree with the plain language of heading 2936, and therefore the context otherwise requires that such intermixtures and concentrates be classified under heading 2936. Thus, if the merchandise were an intermixture or concentrate of cyanocobalamin and hydroxocobalamin (whether pure or impure or in a solvent or not) it would fall under heading 2936. It is neither of these. The merchandise is clearly not a concentrate, and the merchandise contains six times as much proteinaceous material as vitamin.

The proteinaceous material is not simply an impurity in the vitamin B–12 product.[7] The addition of proteinaceous material is a natural part of the manufacturing process and there is no need or desire to eliminate the material from this animal food product. In fact, more non-nutritive material is added to the merchandise, once it is dehydrated, in order to aid in mixing with other animal feed ingredients. The court cannot find a way to squeeze this multi-ingredient merchandise into the terms of Note 1 and the "context" does not appear to require its classification anywhere in Chapter 29. Other contexts within Chapter 29 may require

---

[6] The Explanatory Notes describe vitamin B–12 as a dark red *crystal.* Customs Co-Operation Council, 1 Harmonized Commodity Description and Coding System, Explanatory Notes, Heading No. 29.36, at 405 (1st ed. 1986). The product as issued is not crystalline, nor is it derived from crystalline vitamin B–12.

[7] None of the definitions of impurity offered by the parties was met.

disregard of the listing in Note 1, as defendant's examples indicate, but these are not the contexts that might include this merchandise.

The main thrust of defendant's argument seems to be that Vitamin B–12 is an *eo nomine* classification, which includes all forms of the product. The argument continues that because the vitamin is the active ingredient in the merchandise and the merchandise is labeled and sold only for this content, that the merchandise is vitamin B–12.[8] Defendant wishes the court, in essence, to ignore the careful listing of Note 1 and essentially all of the explanatory notes in favor of its *eo nomine* argument.

The merchandise at issue is a combination of two organic compounds and substantial amounts of proteinaceous material and other substances. This is the nature of the merchandise. It simply does not fit within the wording of Chapter 29, even if its purpose is to serve the same function for animals as does pure crystalline vitamin B–12 for humans. Ordinary rules of statutory construction dictate that the court not apply the "context otherwise requires" language of Note 1 in a manner which makes the careful listing of the note meaningless. *See Astoria Fed. Sav. & Loan Ass'n v. Solimino,* 111 S. Ct. 2166, 2171–72 (1991) (as a general rule, a statute should not be construed in such a way as to render any part of it meaningless). Defendant's *eo nomine* argument would do just that. The court need not choose among subheadings within Chapter 29, as the entire chapter is not applicable to this product.

The court will now turn to the claimed classifications within Chapter 23. As noted earlier, item 2309.90.90 covers other preparations of a kind used in animal feeding. The Explanatory Notes describe heading 2309 as including products that are obtained from processing vegetable matter (e.g. sugar and molasses) and which have lost the characteristic cellular structure of the original vegetable matter. 1 Harmonized Commodity Description and Coding System, Explanatory Notes, Heading No. 23.09, at 176. This description would seem to fit the product at issue exactly. The Explanatory Notes also indicate that the preparations that are covered under heading 2309 include preparations for use in making supplementary feeds and preparations consisting of an active substance, such as a vitamin or antibiotic, in a carrier. *Id.* at 178. The *example* of the dried contents of a fermentation vessel which contains between 8 and 16 percent antibiotic is a close analogy.[9] *Id.* at 177. Thus, item 2309.90.90 would seem to describe the merchandise very closely.

The fact that the animal feed preparation is still suspended in water at the time of importation should not have an effect on classification, as the parties appear to concede. In its post-trial brief, defendant appears to

---

[8] Defendant did not specifically argue that the product is "no more than" vitamin B–12 because the proteinaceous material is non-active or auxiliary. The court assumes that defendant did not argue this aspect of general *eo nomine* law because of the specific wording of Note 1. The court agrees that Note 1 precludes such an approach.

[9] There is, however, an exclusion to heading 2309 for the filtered first stage extractions of the antibiotic manufacturing process and the residues of this process. *See* 1 Harmonized Commodity Description and Coding System, Explanatory Notes, Heading No. 23.09, at 178. The court assumes defendant did not argue this in its post-trial brief as the exclusion is much narrower than the inclusory note relied on by the court in the above discussion.

abandon its argument that the merchandise is not a preparation of a kind used in animal feeding because it is ordinarily dried and powdered before it is added to other preparations for feeding to animals.[10] The merchandise only has one purpose and many other recognized animal feed preparations require further processing, such as mixing, before feeding to animals.

Note 1 to Chapter 23 does indicate that byproducts of vegetable processing are not covered by heading 2309. Note 1 to Chapter 23, HTSUS. The Explanatory Notes reflect that what is meant are byproducts of products described in heading 2308, that is, vegetable material and waste of a kind used in animal feeding. 1 Harmonized Commodity Description and Coding System, Explanatory Notes, Heading No. 23.09, at 178. The merchandise at issue begins as a byproduct of vegetable material processing for pure vitamin B–12 production, but the byproduct is further processed in a separate side stream production process. Thus, the merchandise is not a simple byproduct of merchandise described in heading 2308. Accordingly, the merchandise at issue is not excluded from heading 2309. Furthermore, heading 2308 itself does not describe the merchandise.

In sum, the court finds that item 2309.90.90 provides the correct classification for the merchandise at issue. Customs shall so reliquidate the entries at issue and make appropriate refunds with interest as required by law.

---

[10]Testimony indicates that although it is not the usual practice, the merchandise in imported form could be used directly in other animal feed preparations.