UNITED STATES *v.* SANDOZ CHEMICAL WORKS, INC. (No. 4976)[1]

United States Court of Customs and Patent Appeals, June 30, 1959

*George Cochran Doub*, Assistant Attorney General, *Richard E. FitzGibbon*, Chief, Customs Section (*Murray Sklaroff*, trial attorney, of counsel), for the United States.

[1] C. A. D. 711.

*Richard F. Weeks,* (*Eugene R. Pickrell* of counsel), for the appellee.

Before WORLEY, Acting Chief Judge, and RICH, MARTIN, *and* JOHNSON (retired), Associate Judges.

MARTIN, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the Customs Court, First Division, C.D. 1956 and Abs. 62222, sustaining the importer's protest, and holding the imported merchandise to be classifiable under paragraph 5 of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, T.D. 52739, at the rate of 12½ per centum ad valorem, as a chemical compound. The subject importation was classified by the collector under paragraph 24 of the Tariff Act of 1930 at the rate of 20 cents per pound and 25 per centum ad valorem as an "alcoholic compound." The applicable portions of the paragraphs read as follows.

Paragraph 5 of the Tariff Act of 1930, as modified by T.D. 52739:

> All chemical elements, all chemical salts and compounds, all medicinal preparations and all combinations and mixtures of any of the foregoing, all the foregoing obtained naturally or artificially and not specially provided for * * *_____ 12½% ad val.

Paragraph 24 of the Tariff Act of 1930:

Chemical elements, and chemical and medicinal compounds, preparations, mixtures, and salts, distilled or essential oils, expressed or extracted oils, animal oils and greases, ethers and esters, flavoring and other extracts, and natural or synthetic fruit flavors, fruit esters, oils and essences, all the foregoing and their combinations when containing alcohol, and all articles consisting of vegetable or mineral objects immersed or placed in, or saturated with, alcohol, except perfumery and spirit varnishes, and *all alcoholic compounds not specially provided for,* if containing 20 per centum of alcohol or less, 20 cents per pound and 25 per centum ad valorem; * * * (Emphasis added.)

The imported merchandise, called "Plastine," is a chemical composition used on textiles to prevent wrinkling. The composition comprises a urea-formaldehyde condensation product and, as a polymerization inhibitor, methyl alcohol in an amount stipulated to be less than twenty percent by weight.

The Customs Court found that the provision in paragraph 24 for "alcoholic compounds" encompasses only those compositions wherein *ethyl* alcohol is present. Since the merchandise at bar contains *methyl* alcohol, the court held the importation not classifiable under that provision, but rather embraced within the residual provisions of paragraph 5, as a mixture of chemical compounds not specially provided for, and so finding, sustained the protest.

Appellant contends that the lower court erred in restricting "alcoholic compounds," as set forth in paragraph 24, to those "compounds"

containing ethyl alcohol. It claims that the term "alcohol" is a class designation, which is free of limitation, and thereby embraces all members of the class, including both methyl alcohol and ethyl alcohol.

An "alcoholic compound" in the tariff sense includes mixtures wherein an "alcohol" is present, as well as a true compound in the chemical sense. *C. H. Arnold & Co.* v. *United States*, 20 CCPA 417, T.D. 46259. Therefore, the issue before us is drawn to the legal significance of the term "alcoholic" in paragraph 24. Was it the intent of Congress to limit the "alcoholic compounds" provided for therein to those which contain ethyl alcohol?

Of course we are aware that the term "alcohol" is used in many of the provisions of the Tariff Act of 1930 and its meaning in some of the paragraphs may be clear. However, we do not find it so with reference to paragraph 24. Therefore, in endeavoring to ascertain the congressional intent as to the word "alcoholic" in paragraph 24, it is imperative that we apply the usual principles of statutory construction which have guided this court so many times before.

The cardinal principle to be invoked is that Congress utilized the common meaning of the word in issue absent evidence of a contrary commercial designation. *Nylos Trading Company* v. *United States*, 37 CCPA 71, C.A.D. 422, and cases there cited. We find nothing of significance which would warrant the determination that other than the common meaning of the term "alcohol" was intended here.

It is fundamental that we may refer to lexicons and other suitable authorities to aid us in determining the common meaning of a word. *United States* v. *Tropical Craft Corp.*, 42 CCPA 223, C.A.D. 598; *United States* v. *C. J. Tower & Sons*, 44 CCPA 1, C.A.D. 626; *Floral Arts Studio, et al.* v. *United States*, 46 CCPA 21, C.A.D. 690. With reference to "alcohol," the applicable authorities are numerous. They indicate clearly that the common meaning of the word is limited to ethyl alcohol or ethanol.

Webster's New International Dictionary, 1932, defines alcohol as: [2]

3. A colorless, volatile, inflammable liquid, $C_2H_5OH$, one of the products of vinous fermentation and contained in wine (hence called *spirit of wine*), beer, whisky, and the other fermented and distilled liquors, of which it is the intoxicating principle; also, loosely, any liquor containing it. * * *

Funk & Wagnall's New Standard Dictionary, 1931, gives the meaning of alcohol as:

1. A volatile, inflammable, colorless liquid ($C_2H_5OH$) of a penetrating odor and burning taste, derived principally from sugars and sugar-giving substances, as by fermentation and subsequent distillation; the intoxicating principle of wines and other fermented beverages; ethyl alcohol. * * *

---

[2] Definitions 1 and 2 in this dictionary are obsolete.

The same two authorities state the *chemical* definition of the word in question in the following terms:

*Webster's*

4. *Chem.* Any one of a class of compounds analogous to common alcohol in constitution. All are hydroxides of organic radicals; as, common or *ethyl alcohol,* $C_2H_5OH$ (see def. 3, above) ; *methyl alcohol or wood alcohol,* $CH_3OH$, * * *

*Funk & Wagnall's*

3. *Chem.* One of a group of the general formula $C_nH_{2n+1}OH$ * * *

The Condensed Chemical Dictionary, 1930, points out that:

*The term as used in common parlance applies to ethyl alcohol.* Chemically, alcohol is a generic term applied to a series of compounds, * * * (Emphasis added.)

Additionally, Hackh's Chemical Dictionary, 1929, supplies the following meaning:

*Alcohol.*
(1) Ethanol or ethyl alcohol.

Also, the text "Chemicals of Commerce," 1939, by Snell & Snell asserts that:

The most common alcohol, ethyl alcohol, is next in importance to water as a solvent and may be said to occupy the same position in organic chemistry as water does in inorganic chemistry. *When only alcohol is specified ethyl alcohol is meant.* * * * (Emphasis added.)

The above references all indicate that the common understanding of alcohol is more limited than the scientific meaning of the term, and is restricted to ethyl alcohol.

 It is well settled that, in the absence of evidence of a contrary legislative intent, tariff terms are not to be classified according to their scientific meaning, where that meaning differs from the common or commercial understanding of the term. *Nylos Trading Company* v. *United States,* supra.

Furthermore, there is no compelling indication in the legislative history of paragraph 24 of the 1930 Act or, for that matter, in the history of any of the predecessor provisions for "alcoholic compounds," that any meaning different from that commonly understood for "alcohol" was intended by Congress. In fact, the following appeared in "Notes on Tariff Revision," 1909, prepared for the Committee on Ways and Means of the House of Representatives prior to the enactment of the Tariff Act of 1909, at page 32:

When the term ether is used without qualification diethyl or sulphuric ether is meant, just as *ethyl alcohol is understood when alcohol is mentioned without qualification.* (Emphasis added.)

Appellant contends that since paragraph 2 of the Tariff Act of 1930 provides, *inter alia,* for:

\* \* \* dihydric alcohols; \* \* \* allyl alcohol, crotonyl alcohol, vinyl alcohol, and all other olefin or unsaturated alcohols; \* \* \*

and paragraph 4 of that Act provides in part for:

Alcohol: Amyl, butyl, hexyl, and propyl, all the foregoing whether primary, secondary, or tertiary; \* \* \*; methyl or wood (or methanol) \* \* \*; and ethyl for nonbeverage purposes only, \* \* \*

the word "alcohol" as used in paragraph 24 must necessarily be the class designation which would include all species of the genus. This contention is not borne out when other paragraphs of the Act are considered. For instance, the word "alcohol" without limitation is used in various of those paragraphs pertaining to "Spirits, Wines, and Other Beverages" in Schedule 8.[3] Certainly, potable ethyl alcohol is the only one intended by the use of that word in those paragraphs.

Appellant further argues that Congress intended "alcohol" in paragraph 24 to be interpreted as a generic term, including methyl alcohol, because that paragraph specifically excepts spirit varnishes, whereas paragraph 75 of the Tariff Act of 1930 provides that the duty on spirit varnishes shall be levied according to their methyl alcohol content. Therefore, it is reasoned, if all forms of alcohol were not included in paragraph 24 the exception would be superfluous, since there would be no reason to except products that are not initially included in the paragraph. However, this contention is untenable since it presupposes that all "spirit varnishes" must contain methyl alcohol whereas such is not in fact the case. The Summary of Tariff Information, 1929, at page 351, in discussing paragraph 77 of the Act of 1922, the predecessor of paragraph 75, defines spirit varnishes as:

\* \* \* a solution of a gum resin, for example, shellac in a volatile solvent, such as grain [ethyl] or wood [methyl] alcohol or a mixture of the two; \* \* \*

The exception in paragraph 24 may therefore be consistently construed to exclude from that · paragraph those spirit varnishes containing *ethyl alcohol* which would otherwise be included therein.

Although the Summary of Tariff Information, 1929, refers to the Treasury Department ruling, T.D. 42404, 52 Treas. Dec. 210, wherein the Commissioner of Customs indicated that paragraph 24 embraced products which contained other than ethyl alcohol, and this Summary was available to the Congress when it enacted the Act of 1930, we nevertheless believe that such factor, while entitled to some weight, is insufficient to show that Congress intended paragraph 24 to include materials not embraced within the common meaning of "alcohol."

Therefore, the term "alcohol" in paragraph 24 of the Tariff Act of 1930 is construed to be limited to *ethyl* alcohol, in accord with the common meaning of the word, as heretofore determined. The im-

---

[3] See paragraphs 804, 806, 807· and 808, 19 U.S.C. § 1001.

ported composition, containing *methyl* alcohol, is accordingly not classifiable for duty under the aforesaid paragraph. Since the collector has not indicated that the merchandise is excluded from paragraph 5 of the Tariff Act of 1930, and the composition is a member of the class of "* * * all chemical salts and compounds, * * * and all combinations and mixtures of the foregoing, * * * not specially provided for * * *," as claimed by the importer, we hold it classifiable under this paragraph. We therefore *affirm* the judgment of the court below.