**Slip Op. 99-139**

# United States Court of International Trade

|  |  |
|---|---|
| RUSSELL STADELMAN & CO., | |
| Plaintiff, | |
| v. | Before: Pogue, Judge |
| UNITED STATES, | |
| Defendant, | Court No. 96-08-01911 |

[Plaintiff's Motion for Summary Judgment is denied; Defendant's Cross-Motion for Summary Judgment is granted.]

Decided: December 21, 1999

Sandler, Travis & Rosenberg, P.A., (Edward M. Joffe and Beth C. Ring) for Plaintiff.

David W. Ogden, Acting Assistant Attorney General, Joseph I. Liebman, Attorney-in-Charge, International Trade Field Office, Mikki Graves Walser, Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice; George Brieger, Office of Assistant Chief Counsel, International Trade Litigation, U.S. Customs Service, Of Counsel, for Defendant.

## Opinion

**Pogue, Judge:** Plaintiff, Russell Stadelman & Co., challenges a decision of the United States Customs Service ("Customs") denying Plaintiff's protests filed in accordance with section 514 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1514 (1994). At issue

is the proper tariff classification under 19 U.S.C. § 1202 (1994),

Harmonized Tariff Schedule of the United States ("HTSUS"), of

Plaintiff's imports of sumauma (*Ceiba pentandra*) plywood, faveira

(*Parkia spp.*) plywood, and mangue (*T. rhoisoia*) plywood from

Brazil.[1]

Plaintiff claims that the subject merchandise is classifiable

under subheading 4412.11.20, HTSUS (1992-1995),[2] which covers

"[p]lywood consisting solely of sheets of wood, each ply not

exceeding 6 mm in thickness . . . [w]ith at least one outer ply of

the following tropical woods: . . . Baboen[.]" Plywood imported

from Brazil and classifiable under subheading 4412.11.20, HTSUS, is

eligible for duty-free treatment under the Generalized System of

Preferences ("GSP").  Customs classified the merchandise under a

---

[1]The italicized names in parentheses refer to each plywood's corresponding scientific name.  The scientific names are based on taxonomy, the hierarchy of biological classification comprised of kingdom, phylum, class, order, family, genus, and species.  See McGraw-Hill Concise Encyclopedia of Science and Technology 1847-48 (2d ed. 1989).  The first name in parentheses is the genus, the second is the species.  "Spp." stands for *species plurales*, indicating that all species of the given genus are referred to.

The "*T.*" in "*T. rhoisoia*" is apparently the genus abbreviated.  The record, however, fails to indicate which genus the "*T.*" refers to.

[2]Plaintiff imported from Brazil the plywood at issue during the period October 1992 through February 1995.  Throughout these years, the language of the relevant HTSUS provisions remained the same.

residual provision, subheading 4412.12.20, HTSUS (1992-1995), which covers "[p]lywood consisting solely of sheets of wood, each ply not exceeding 6 mm in thickness[,]" and not requiring an outer ply of one of the tropical woods enumerated in subheading 4412.11, HTSUS. Brazilian imports classifiable under subheading 4412.12.20, HTSUS, are not eligible for GSP treatment; therefore, Customs assessed the subject merchandise at the provided 8% duty rate.

Jurisdiction is predicated on 28 U.S.C. § 1581(a)(1994); therefore, Customs' classification is subject to *de novo* review pursuant to 28 U.S.C. § 2640 (1994).  This action is before the Court on the cross-motions for summary judgment made by Plaintiff and Defendant, the United States, pursuant to USCIT Rule 56.[3]

## Standard of Review

Under USCIT Rule 56, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  USCIT Rule 56(d); see

---

[3]Defendant moved this Court for an order granting oral argument on the parties' cross-motions for summary judgment. Because the issues presented are thoroughly addressed in the parties' briefs, however, Defendant's motion is denied.

also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986);
Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The Court analyzes a Customs classification issue in two
steps: "first, [it] construe[s] the relevant classification
headings; and second, [it] determine[s] under which of the properly
construed tariff terms the merchandise at issue falls."  Bausch &
Lomb, Inc. v. United States, 148 F.3d 1363, 1365 (Fed. Cir.
1998)(citing Universal Elecs., Inc. v. United States, 112 F.3d 488,
491 (Fed. Cir. 1997)).  Whether the subject merchandise is properly
classified is ultimately a question of law.  See id.  Summary
judgment of a classification issue is therefore appropriate "when
there is no genuine dispute as to the underlying factual issue of
exactly what the merchandise is."[4]  Id.

Here, the parties agree what the merchandise is.  The parties
agree that the subject merchandise "consists of sheets of plywood,
with no single ply exceeding 6 mm. [sic] in thickness, and [that

_____

[4]Following the Federal Circuit's holding in The Mead Corp.
v. United States, 185 F.3d 1304, 1307 (1999), the Court does not
afford the deference articulated in Chevron U.S.A., Inc. v.
Natural Resources Defense Council, 467 U.S. 837, 843-45 (1984),
to Customs' standard classification rulings.  Moreover, although
there is a statutory presumption of correctness, see 28 U.S.C. §
2639(a)(1), that attaches to Customs' classification decisions,
that presumption does not apply where the Court is presented with
a question of law in a proper motion for summary judgment, see
Universal Electronics, 112 F.3d at 492.

are] not surface covered."  Pl.'s Statement of Material Facts As To Which There Is No Genuine Issue To Be Tried ("Pl.'s Statement") ¶ 1; Def.'s Resp. to Pl.'s Statement ¶ 1.  Moreover, the parties agree that the merchandise at issue consists of sumauma (*Ceiba pentandra*) plywood, faveira (*Parkia spp.*) plywood, and mangue (*T. rhoisoia*) plywood.[5]  See Def.'s Additional Statement of Material Facts As To Which There Is No Genuine Issue To Be Tried ("Def.'s Additional Statement") ¶ 1; Pl.'s Resp. To Def.'s Additional Statement ¶ 1.  Thus, Plaintiff and Defendant do not disagree as to what the merchandise is; they simply disagree as to how it should

---

[5]Originally in its complaint, Plaintiff stated that the subject imports were invoiced as "virola, white virola, sumauma, faviera [sic], mangue, amesclao, breu, muiratinga, guatambu[,] and/or with terms of similar import and description."  Pl.'s Compl. ¶ 18.  According to Defendant, however, the subject imports were invoiced as edai virola (baboen) plywood and red virola (baboen) plywood, which Customs classified under subheading A4412.11.20, HTSUS, free of duty; sumauma (*Ceiba pentandra*) plywood, faveira (*Parkia spp.*) plywood, and Mangue (*T. rhoisoia*) plywood, which Customs classified under subheading 4412.12.20, HTSUS, 8% *ad valorem*; pinus plywood, which Customs classified under subheading 4412.19.40, HTSUS, 20% *ad valorem*; and veneers of amesclao, light breu, and copaiba, which Customs classified under subheading 4408.90.00, HTSUS, free of duty.  See Def.'s Resp. to Pl.'s Statement ¶ 3; Def.'s Mem. in Opp'n to Pl.'s Mot. for SJ at 1-2.
    Therefore, according to Defendant, the only imports at issue are sumauma (*Ceiba pentandra*) plywood, faveira (*Parkia spp.*) plywood, and mangue (*T. rhoisoia*) plywood.  See Def.'s Mem. in Opp'n to Pl.'s Mot. for SJ at 2.  Plaintiff now agrees that the only imports at issue are sumauma, faveira, and mangue plywood. See Pl.'s Resp. To Def.'s Additional Statement ¶ 1.

be classified.  Summary judgment of the classification issue is therefore appropriate.


## Discussion

The HTSUS consists of (A) the General Notes; (B) the General Rules of Interpretation; (C) the Additional U.S. Rules of Interpretation; (D) sections I to XXII, inclusive (encompassing chapters 1 to 99, and including all section and chapter notes, article provisions, and tariff and other treatment accorded thereto); and (E) the Chemical Appendix.

The proper classification of merchandise is governed by the General Rules of Interpretation ("GRI") to the HTSUS.  See Orlando Food Corp. v. United States, 140 F.3d 1437, 1439 (Fed. Cir. 1998). GRI 1 for the HTSUS provides that, "for legal purposes, classification shall be determined according to the terms of the headings and any relative section or chapter notes . . . ."  GRI 1, HTSUS; see also Orlando Food Corp., 140 F.3d at 1440; Harmonized Commodity Description and Coding System, Explanatory Notes (1st ed. 1986)("Explanatory Notes")[6] at 1 ("[T]he terms of the headings and

---

[6]The Explanatory Notes "provide a commentary on the scope of each heading of the Harmonized [Tariff] System and are thus useful in ascertaining the classification of merchandise under the system."  H.R. Conf. Rep. No. 576, 100th Cong., 2nd Sess. 549

any relative Section or Chapter Notes are paramount, i.e., they are the first consideration in determining classification[.]").  Here, the parties agree that the subject imports should be classified under heading 4412, HTSUS, but dispute the correct subheading. Therefore, the Court reviews the parties' proffered classifications pursuant to GRI 6.  See GRI 6, HTSUS ("For legal purposes, the classification of goods in the subheadings of a heading shall be determined according to the terms of those subheadings and any related subheading notes and, *mutatis mutandis*, to the [preceding GRIs], on the understanding that only subheadings at the same level are comparable.").

The merchandise at issue literally falls within the scope of Customs' classification under subheading 4412.12.20, HTSUS, a residual provision covering plywood without an outer ply of one of the tropical woods enumerated in subheading 4412.11, HTSUS. Plaintiff argues, however, that the subject merchandise is more specifically classifiable under subheading 4412.11.20, HTSUS, as plywood with at least one outer ply of the tropical wood "baboen." Classification of imported merchandise in a residual, or "basket,"

_____

(1988).  It has long been settled that, "[w]hile the Explanatory Notes do not constitute controlling legislative history, they do offer guidance in interpreting HTS[US] subheadings." Lonza, Inc. v. United States, 46 F.3d 1098, 1109 (Fed. Cir. 1995).

provision is only appropriate when there is no tariff category that covers the merchandise more specifically.  See EM Indus., Inc. v. United States, 22 CIT _____, _____, 999 F. Supp. 1473, 1480 (1998)("'Basket' or residual provisions of HTSUS Headings . . . are intended as a broad catch-all to encompass the classification of articles for which there is no more specifically applicable subheading."); E.M. Chemicals v. United States, 20 CIT ___, ___, 923 F. Supp. 202, 206 (1996); see also GRI 3(a), HTSUS.  Therefore, before the Court may conclude that Customs correctly classified the subject goods under subheading 4412.12.20, HTSUS, we must first address whether they are more specifically classifiable under subheading 4412.11.20, HTSUS.  The precise issue before the Court, then, is whether Plaintiff's imports of sumauma (*Ceiba pentandra*) plywood, faveira (*Parkia spp.*) plywood, and mangue (*T. rhoisoia*) plywood qualify as "baboen."

Neither the HTSUS nor its legislative history defines "baboen."  "When a tariff term is not defined in either the HTSUS or its legislative history, the term's correct meaning is its common meaning."  Mita Copystar America v. United States, 21 F.3d 1079, 1082 (Fed. Cir. 1994)(citing Lynteq, Inc. v. United States, 976 F.2d 693, 697 (Fed. Cir. 1992)).  To determine the common meaning of a tariff term, "[a] court may rely upon its own

understanding of terms used, and may consult standard lexicographic and scientific authorities[.]" Id. (citing Brookside Veneers, Ltd. v. United States, 6 Fed. Cir. (T) 121, 125, 847 F.2d 786, 789 (1988)). "Additionally, a court may refer to the Explanatory Notes of a tariff subheading, which do not constitute controlling legislative history but nonetheless are intended to clarify the scope of HTSUS subheadings and to offer guidance in interpreting subheadings." Id. (citing Lynteq, 976 F.2d at 699).

Thus, the Court turns to various dictionaries and scientific authorities to construe the tariff term "baboen." Although most of the dictionaries the Court consulted did not define the term, the ones that did defined "baboen" as a "tropical American timber tree (*Myristica surinamensis*) with reddish wood." Webster's New International Dictionary 197 (1955); Webster's Third New International Dictionary 156 (1993). *Myristica* is a botanical genus within the family *Myristicaceae*. See The Concise Oxford Dictionary of Botany, 268 (Michael Allaby ed., 1992).

Meanwhile, a more technical dictionary defines "baboen" as "*Virola surinamensis*[.]" D.J. Mabberley, The Plant Book: A Portable Dictionary of the Vascular Plants 71 (1997). *Virola surinamensis*, in turn, is the scientific name for a tropical American timber within the botanical genus *Virola*, which also falls

under the botanical family *Myristicaceae.*   See id. 747-48. Plaintiff's Exhibit 1 to its motion for summary judgment, another technical source, also defines "baboen" as *Virola surinamensis*, citing as related species *Virola sebifera* and *Virola melinonii.* See Surinam Forest Service, Surinam Timber: A Summary with Brief Descriptions of the Main Timber Species of Surinam 7-8 (2d ed. 1955).

The Court cannot locate a technical dictionary recognizing *Myristica surinamensis* as an actual tree.  Thus, the standard and technical dictionaries do not appear to define "baboen" consistently.  For the following reasons, however, the Court concludes that in this case it is more accurate to rely on the scientific authorities for the common meaning of the term.  First, as noted above, most standard dictionaries do not even define the term, and the ones that did defined the term scientifically.  In addition, it is undisputed that the term "baboen" is not used commercially in the United States.  See Def.'s Additional Statement ¶ 3; Pl.'s Resp. to Def.'s Additional Statement ¶ 3.  In such situations where a tariff term is not generally or commercially used, it is particularly appropriate to consult more technical authorities for the term's intended meaning.  See C.J. Tower & Sons of Buffalo, Inc. v. United States, 69 Cust. Ct. 105,   111

(1972)(recognizing that the court may consult technical sources in construing tariff terms where the definitions of articles of a technical nature are not reflected in dictionaries prepared for general use), aff'd, 61 C.C.P.A. 74, 496 F.2d 1219 (1974).

Second, authoritative sources indicate that the standard and technical definitions of "baboen" are actually consistent. At the end of the 1800s, *Myristica* was the only recognized genus of the family *Myristicaceae*. See Dr. E. Warming, A Handbook of Systematic Botany 393 (1895). Since then, the scope of *Myristicacea* has broadened to include up to nineteen genera, *Virola* among them. See Roger Hyam and Richard Pankhurst, Plants and Their Names: A Concise Dictionary 332 (1995); The Concise Oxford Dictionary of Botany 268 (Michael Allaby ed., 1992). At one point during the evolution of the term, it appears that *Myristica* and *Virola* were synonymous. See Paxton's Botanical Dictionary 384, 585 (Samuel Hereman ed., 1868). Thus, it appears likely that the standard dictionary definition of "baboen" as *Myristica surinamensis* is based on an outdated scientific definition of the term, which was replaced by *Virola surinamensis* when *Virola* became an additionally recognized genus of the family *Myristicaceae*. Under this theory, then, the standard lexicographic and scientific definitions for "baboen" are

consistent.[7]

In addition, the Explanatory Notes help to define Congress'
intended meaning of "baboen."   The subheading Explanatory Note to
Chapter 44 explains that,

> For the purposes of classification in subheadings 44.03,
> 44.07, 44.08 and 44.12, certain tropical woods are
> designated according to the pilot-name recommended by the
> International Technical Association for Tropical Timber
> (l'Association Technique Internationale des Bois
> Tropicaux)(ATIBT).   The pilot-name is based on the
> popular name employed in the principal country of
> production or of consumption.
>
> The relevant pilot-names, together with corresponding
> scientific names and local names, are listed in the Annex
> to the Explanatory Notes to this Chapter.

Explanatory Notes at 623.

During the drafting of Chapter 44 to the Harmonized Tariff
System, the United Nations Conference on Trade and Development
("UNCTAD") recommended that the Harmonized System Committee of the
Customs Cooperation Council adopt the ATIBT pilot-names for certain
tropical woods.   See Harmonized Commodity Description and Coding
System, Chapter 44: Wood and Articles of Wood, Proposals Submitted
by UNCTAD, Doc. 23.769 E at 3 (Dec. 20, 1977).   Many of the

---

[7]The Court's finding is buttressed by the fact that
Plaintiff did not argue that there is any inconsistency between
the standard and technical dictionaries' respective definitions
of "baboen."

tropical wood species had different names in commerce according to local dialect.  See id.  Thus, the Harmonized System Committee adopted the ATIBT pilot-names for use in the Harmonized Tariff Schedule, as the pilot-names represented "the only existing international [n]omenclature, established by agreement between producers of or traders in tropical timber and scientific bodies." Harmonized Commodity Description and Coding System, Chapter 44: Wood and Articles of Wood, Additional Information and New Proposals Submitted by UNCTAD, Doc. 24.153 E at 5 (Apr. 12, 1978).

As with each pilot-name, the Explanatory Notes Annex to Chapter 44 lists "baboen" with its corresponding scientific and local names.  See Explanatory Notes at 643.  No local name for "baboen" in the United States is listed.  See id.  The scientific names listed as equivalent to "baboen" are *Virola venezuelensis*, *Virola bicuhyba*, *Virola melinonii*, *Virola surinamensis*, *Virola mycetis*, and *Virola koschnyi*.  See id.[8]

The ultimate question for this Court to answer is whether the subject merchandise was properly classified.  See Bausch & Lomb,

---

[8]The Annex lists "Ucuhuba" as the local name for "baboen" in Brazil, the exporting country.  See Explanatory Notes at 643. "Ucuhuba" is defined as *Virola surinamensis.*  See D.J. Mabberley, The Plant Book: A Portable Dictionary of the Vascular Plants 734 (1997).

148 F.3d at 1365.  Although the lexicographic and Explanatory Note definitions of "baboen" differ slightly, both appear to limit the scope of the term to species of the genus *Virola*.  Plaintiff's imports of sumauma (*Ceiba pentandra*) plywood, faveira (*Parkia spp.*) plywood, and mangue (*T. rhoisoia*) plywood are not of the genus *Virola*.  Therefore, Plaintiff's imports are not classifiable as plywood with "at least one outer ply of . . . Baboen" under subheading 4412.11.20, HTSUS.  Accordingly, Customs correctly classified the subject imports under subheading 4412.12.20, HTSUS, the residual provision for "[p]lywood consisting solely of sheets of wood, each ply not exceeding 6 mm in thickness[,]" and not requiring an outer ply of one of the tropical woods enumerated in subheading 4412.11, HTSUS.

Plaintiff advances three main arguments challenging Customs' refusal to classify the subject imports as containing an outer ply of "baboen" within the meaning of subheading 4412.11.20, HTSUS: (1) the tariff term "baboen" should be interpreted according to its common and commercial meaning, which is broader than its scientific meaning, see Mem. in Supp. of Pl.'s Mot. for SJ at 14; (2) even if the Court were to find that the common and commercial meanings of "baboen" differ, Plaintiff's imports are within the commercial meaning of the term, see id. at 26-28; see also Pl.'s Reply to

Def.'s Mem. in Opp'n to Pl.'s Mot. for SJ ("Pl.'s Reply") at 20-21; and (3) classification according to scientific names is commercially impracticable to administer because many tropical plywoods are manufactured from mixed species yet marketed under a single commercial name, see Mem. in Supp. of Pl.'s Mot. for SJ at 24-25.

**(A) Common and commercial meaning versus scientific meaning**

Plaintiff argues that "tariff terms are to be interpreted according to a common and commercial meaning broader in scope than narrow scientific definition--unless there is a clear expression of Congressional intent to use that narrower scientific definition." Mem. in Supp. of Pl.'s Mot. for SJ at 14, 15 (citing Two Hundred Chests of Tea, 22 U.S. 430 (1824); Alexandria Int'l, Inc. v. United States, 13 CIT 689 (1989)).

According to Plaintiff, the common and commercial meaning of "baboen" is virola, and "virola"[9] covers not only the species of the botanical genus *Virola*, but the thirty-five near species, including Plaintiff's imports of sumauma (*Ceiba pentandra*) plywood, faveira (*Parkia spp.*) plywood, and mangue (*T. rhoisoia*) plywood.

---

[9]Henceforth, "virola" in normal script refers to the common designation of the term; "*Virola*" italicized and capitalized refers to the term's scientific meaning as a botanical genus.

See Mem. in Supp. of Pl.'s Mot. for SJ at 6.  Customs therefore erred, Plaintiff argues, in limiting "baboen" to its scientific definition, which only covers species of the botanical genus *Virola*.  See id. at 17.

In construing the meaning of a tariff term, the Supreme Court in Two Hundred Chests of Tea pronounced, "[The legislature] did not suppose our merchants to be naturalists, or geologists or botanists.  It applied its attention to the description of articles, as they derived their appellations in our own markets[.]" 22 U.S. at 438.  Similarly, in Alexandria Int'l, this court recognized, "It is well established that where the scientific meaning of a tariff term differs from the term's common or commercial meaning, the term is not to be construed according to the scientific meaning, absent a contrary intent by Congress in using the term."  13 CIT at 692 (citing Two Hundred Chests of Tea, 22 U.S. at 438).

Plaintiff's reliance on these two cases in this instance, however, is misplaced.  In Two Hundred Chests of Tea, the Supreme Court reviewed whether certain imported teas fell within the common and commercial meaning of "bohea tea."  See 22 U.S. at 439.  In doing so, the Court defined the scope of actual terms of the statute, "bohea tea."  See id. ("The true inquiry, therefore, is,

whether, in a commercial sense, the tea in question is known, and bought and sold, and used, under the denomination of bohea tea."). Similarly, in Alexandria Int'l, this court sought to determine the common and commercial meaning of the tariff term "sardine" in reviewing whether imports of a particular type of anchovy fell within that meaning.  See 13 CIT at 696-97.  Thus, Two Hundred Chests of Tea and Alexandria Int'l indicate that, in applying a tariff term's common and commercial meaning over its scientific meaning, a court must construe the actual terms of the statute. See 22 U.S. at 438-39; 13 CIT at 696-97.

Here, however, Plaintiff does not argue that its imports of plywood are commonly and commercially known in the United States as the tariff term "baboen."  On the contrary, it is undisputed that the term "baboen" is not commercially used in the Untied States. See Def.'s Additional Statement ¶ 3; Pl.'s Response to Def.'s Additional Statement ¶ 3.  Instead, Plaintiff argues that the common and commercial meaning of "baboen" in the United States is virola and that its imports are commonly and commercially known in the United States as "virola."  Thus, Plaintiff defines "virola" in the attempt to persuade this Court that its imports of plywood are within the common and commercial meaning of "baboen."  Plaintiff's conclusion does not logically follow from its premise.

Again, in the absence of a contrary legislative intent, tariff terms are not to be construed according to their scientific meaning, where that meaning differs from the common or commercial meaning. See, e.g., United States v. Sandoz Chemical Works, Inc., 46 C.C.P.A. 115, 118 (1959); Alexandria Int'l, 13 CIT at 692. Here, as discussed above, see supra pp. 11-12, the standard dictionary definition of "baboen" is consistent with the scientific definition. Thus, because the scientific definition does not conflict with the common definition, there is no reason not to construe "baboen" according to its technical definition, especially here where the few standard dictionaries that actually define "baboen" also define the term scientifically, and the term is not generally used. Cf. C.J. Tower & Sons, 69 Cust. Ct. at 111.

Moreover, even if it could be argued that the common meaning of "baboen" is not equivalent to its scientific meaning, there is ample indication that Congress intended to define the term with precision. In prescribing subheading 4412.11, HTSUS, Congress chose to designate certain tropical woods by the pilot-names recommended by the ATIBT. Each pilot-name, in turn, is listed in the Explanatory Notes Annex to Chapter 44 with its corresponding scientific and local names. No local name in the United States is listed for "baboen." See Explanatory Notes at 643. That "baboen"

is thus defined by the scientific names enumerated in the Explanatory Notes Annex as corresponding with the term, see id., indicates that Congress intended to define the term scientifically.[10]

### (B) Commercial meaning

In the alternative, Plaintiff argues that "baboen" should be interpreted according to a commercial designation. Again according to Plaintiff, "the term 'Baboen' is known as 'Virola' in the United States, and that commercial designation of 'Virola' plywood in the United States at the time of enactment of the HTSUS in 1989 or at the time of the subject entries included the plywood with outer plies of the 'near species' including Sumuama, Faveira[,] and Mangue in this case." Pl.'s Reply at 20.

"One who argues that a term in the tariff laws should not be given its common or dictionary meaning must prove that 'there is a different commercial meaning in existence which is definite, uniform, and general throughout the trade.'" Rohm & Haas Co. v. United States, 2 Fed. Cir. (T) 28, 29, 727 F.2d 1095, 1097 (1984)(quoting Moscahlades Bros. v. United States, 42 C.C.P.A. 78,

---

[10]In addition, the available definitions of the local names listed in the Annex for "baboen" are *Virola surinamensis* and/or *Virola koschnyi*. See D.J. Mabberley, The Plant Book: A Portable Dictionary of the Vascular Plants 75, 212, 734, 747-48 (1997).

82 (1954)).  "'Proof of commercial designation is a question of fact to be established in each case.'" Id. (quoting S.G.B. Steel Scaffolding & Shoring Co. v. United States, 82 Cust. Ct. 197, 206 (1979)).

Here, Plaintiff has offered the affidavit and deposition testimony of numerous domestic industry witnesses.  See Mem. in Supp. of Pl.'s Mot. for SJ at 27-28 (citations omitted).  In attempting to prove a commercial meaning for "baboen," however, Plaintiff once again does not define "baboen."  Instead, Plaintiff argues that the commercial designation of "baboen" in the United States is "virola," and that the common meaning of "virola" includes both the species of the botanical genus *Virola* and the thirty-five near-species, which include the subject merchandise. See id. at 6, 9-10, 27-28; Pl.'s Reply at 20-21.  It is undisputed, and Plaintiff concedes, however, that "baboen" is not a term used commercially in the United States.  See Def.'s Additional Statement ¶ 3; Pl.'s Response to Def.'s Additional Statement ¶ 3.  Thus, the term itself does not have a commercial meaning.

In proving commercial designation of a tariff term, one must define the precise terms used in the statute.  See Neuman & Schwiers Co., Inc. v. United States, 24 C.C.P.A. 127, 132 (1936)("The rule is . . . that he who relies upon proving

commercial designation to bring a certain product within a statutory term, must take the term as it appears in the statute."); Borneo Sumatra Trading Co., Inc. v. United States, 56 Cust. Ct. 166, 178 (1966)("If an article is not within the common meaning of a tariff term, in order to bring it within that term by proof of commercial designation, it must be shown that it was bought and sold or known in the trade by the term contained in the statute.").

In Neuman & Schwiers, the predecessor to the Federal Circuit held that the importer did not prove that its imports were within the commercial meaning of the tariff term "sauces," where its imports were bought and sold as "wine sauces," "Sauce Bercy," and "Sauce Bordelais." See 24 C.C.P.A. at 132. Similarly, here, Plaintiff has not shown that its imports of sumauma, faveira, and mangue plywood were commercially known as "baboen." Therefore, Plaintiff has not proven that its imports fall within a commercial meaning of "baboen." Proof of commercial designation requires use of the precise tariff terms at issue.

Plaintiff argues that the holding of "Neuman & Schwiers is inapplicable to this case where the [Explanatory Note Annex to Chapter 44] . . . clearly provides for local names different from the pilot-name, the name appearing in the tariff." Pl.'s Reply at 18. The Court disagrees. Again, in prescribing heading 4412,

HTSUS, Congress chose to designate certain tropical woods by the pilot-names recommended by the ATIBT. Each pilot-name, in turn, is listed in the Explanatory Notes Annex to Chapter 44 with its corresponding scientific and local names, yet no U.S. local name is listed for "baboen." See Explanatory Notes at 643. Therefore, it cannot be presumed that Congress was aware of a United States local name distinct from "baboen."

Thus, the Court's only recourse is to construe the common meaning of the tariff term "baboen" employing lexicographic aids and the applicable Explanatory Notes. See Mita Copystar, 21 F.3d at 1082. As demonstrated above, the lexicographic sources and the Explanatory Notes alike indicate the intent to limit the definition of "baboen" to species of the botanical genus *Virola*. See supra pp. 9-14. Plaintiff's imports of sumauma (*Ceiba pentandra*) plywood, faveira (*Parkia spp.*) plywood, and mangue (*T. rhoisoia*) plywood are not woods of the genus *Virola*. Therefore, Plaintiff's imports are not "baboen" within the meaning of subheading 4412.11.20, HTSUS.[11]

---

[11]Plaintiff notes that the 1996 version of heading 4412, HTSUS, replaced "baboen" with "virola." See Mem. in Supp. of Pl.'s Mot. for SJ at 4, 22 n. 11. In arguing for a commercial designation, Plaintiff contends that the change in terms indicates a recognition by Congress that "baboen" and "virola" were synonymous. See id. at 4; Pl.'s Reply at 20.

## (C) Commercial Practicability

Plywood "consist[s] of three or more sheets of wood glued and pressed one on the other[.]" See Explanatory Notes at 632. "Each component sheet is known as a 'ply[.]'" Id. Subheading 4412.11.20, HTSUS, requires that the plywood consist of at least one outer ply of the enumerated tropical woods, including baboen. Plaintiff argues that "a requirement that[,] in order to be classified as Baboen, at least one outer surface must be of the botanical genus

---

Reference to the 1996 HTSUS, however, does not support Plaintiff's case. As with the earlier HTSUS provisions, Congress based the names of the tropical woods of heading 4412, HTSUS (1996), on the pilot-names recommended by the ATIBT. See Explanatory Notes (1996) at 671 ("For the purposes of . . . the relevant subheadings of headings 44.03, 44.07, 44.08 and 44.12, the names of the tropical woods are designated according to the pilot-names recommended by the [ATIBT]."). Thus, the change in language resulted from the ATIBT's recommendation to change the pilot-name designation.

"'A change in the language of a statute is generally construed to import a change in meaning . . . .'" Bausch & Lomb, 148 F.3d at 1367 (quoting Ruth F. Sturm, Customs Laws and Administration § 51.7 at 57 (1995)). The previous version of the Explanatory Notes Annex to Chapter 44, HTSUS, defines "baboen" scientifically as six species of the genus *Virola*. See Explanatory Notes at 643 (1994). The 1996 version of the Explanatory Notes Annex, meanwhile, defines "virola" as including all species of the genus *Virola*, indicating that "virola" is a broader term than "baboen." Thus, if anything, the replacement of "virola" for the narrower term "baboen" in the 1996 version of heading 4412, HTSUS, supports the conclusion that Customs correctly refused to classify Plaintiff's imports as containing an outer ply of "baboen"; the change is only necessary because the original term did not include the entire genus.

Virola spp." would "not only [be] commercially unfeasible [sic], but virtually impossible to administer."  Mem. in Supp. of Pl.'s Mot. for SJ at 25.

Plaintiff explains that, in making the subject plywood, the Brazilian mills compress wood sheets according to similar color, not according to species.  See id. at 7 (citing Aff. of John Rego ¶ 9, Pl.'s Ex. 9).  Therefore, it is "common to have one species on the face, a different species on the back, and several other species constituting the core" of a given sheet of plywood.  Id. Moreover, the Brazilian industry "invoice[s] based on the species on the face ply of the plywood[,]" and a "mill will identify one species for the entire shipment on the invoice, even though there may be many different species on the faces of the individual plywood panels contained in the entire shipment."  Id. at 8 (citing Aff. of John Rego ¶ 10, Pl.'s Ex. 9).

According to Plaintiff, Customs' interpretation of subheading 4412.11.20, HTSUS, would be commercially infeasible because it would require the "plywood mills [to] actually identify the botanical species of each surface of each piece of plywood in a shipment containing many crates of plywood in order to know how to classify it."  Id. at 25.  Subheading 4412.11.20, HTSUS, however, clearly states that plywood must contain "at least one outer ply of

. . . Baboen" in order to be classified as such, and the Court cannot locate any authority for the theory that the plain language of the tariff schedule will not be given effect where it would burden or inconvenience the producer. In any event, compliance with the tariff provision does not appear commercially infeasible in this case because the Brazilian mills keep an inventory of which timber species they purchase. See Aff. of John Rego ¶ 8, Pl.'s Ex. 9. Under the circumstances of this case, Plaintiff's commercial impracticability argument fails to persuade the Court that Customs incorrectly classified the subject merchandise.

## **Conclusion**

For the foregoing reasons, the Court holds that Customs correctly classified Plaintiff's imports of sumauma (*Ceiba pentandra*) plywood, faveira (*Parkia spp.*) plywood, and mangue (*T. rhoisoia*) plywood under subheading 4412.12.20, HTSUS, as a matter of law.  Accordingly, Plaintiff's motion for summary judgment is denied.  In turn, Defendant's cross-motion for summary judgment is granted, and judgment is entered for Defendant.

_____
Donald C. Pogue
Judge

Dated:      December 21, 1999
            New York, New York

## United States Court of International Trade

RUSSELL STADELMAN & CO.,

               Plaintiff,

      v.

UNITED STATES,

               Defendant,

Before: Pogue, Judge

Court No. 96-08-01911

### Judgment

    This action has been duly submitted for decision, and this Court, after due deliberation, has rendered a decision herein; now, in conformity with that decision, it is hereby

    ORDERED that Customs properly classified Plaintiff's imports of sumauma (*Ceiba pentandra*) plywood, faveira (*Parkia spp.*) plywood, and mangue (*T. rhoisoia*) plywood under subheading 4412.12.20, HTSUS, as a matter of law; and it is further

    ORDERED that Plaintiff's motion for summary judgment is denied; and it is further

    ORDERED that Defendant's cross-motion for summary judgment is granted, and final judgment is entered for Defendant.

                                 Donald C. Pogue
                                      Judge

Dated:    December 21, 1999
            New York, New York