**RUSSELL STADELMAN & CO.,**
**Plaintiff–Appellant,**

v.

**UNITED STATES, Defendant–Appellee.**

No. 00–1157.

United States Court of Appeals, Federal Circuit.

March 12, 2001.

gable duty under state law for which indemnity is sought.

Beth C. Ring, Sandler, Travis & Rosenberg, P.A., of Miami, FL, argued for plaintiff-appellant. With her on the brief was Edward M. Joffe. Of counsel was Gerson M. Joseph.

Mikki Graves Walser, Attorney, International Trade Field Office, Department of Justice, of New York, NY, argued for defendant-appellee. With her on the brief were David M. Cohen, Director, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC; and Joseph I. Liebman, Attorney in Charge, International Trade Field Office.

Before LOURIE, RADER, and GAJARSA, Circuit Judges.

## DECISION

GAJARSA, Circuit Judge.

Russell Stadelman & Co. ("Stadelman") appeals the December 21, 1999 decision of the United States Court of International Trade ("Court of International Trade"), *Russell Stadelman Co. v. United States*, 83 F.Supp.2d 1356 (C.I.T.1999), which determined that the United States Customs Service ("Customs") correctly classified the plywood at issue imported by Stadelman between October 1992 and February 1995 under subheading 4412.12.20, Harmonized Tariff Schedule of the United States ("HTSUS") (1992–1995) and consequently denied Stadelman's motion for summary judgment and granted the United States' cross-motion for summary judgment. We affirm.

## BACKGROUND

During the 1960s and 1970s, Brunzeel, a Dutch company, owned a large mill in Sur-

inam.[1] The Brunzeel mill manufactured plywood known locally as "Baboen."[2] In Surinam, "Baboen" described all mixed species of tropical hardwood plywood manufactured at the Brunzeel mill.

In the early 1970s, Brunzeel purchased a mill in Brazil known as Brumasa. Brumasa sold its plywood under the trade name VIROLA.[3] This plywood included plies of various species of wood in the Virola genus as well as other woods including Sumauma (*Ceiba pentandra* ), Faveira (*Parkia spp.*), and Mangue (*T.rhoisoia* ), which are indisputably not species in the Virola genus.[4] In the mid 1970s, Brunzeel closed its mills in both Brazil and Surinam. Since the 1980s, plywood traders in Brazil and the United States have used the term "Virola" as a trade term to refer to plywood manufactured from approximately 35 species of wood, including species in the Virola genus as well as Sumauma, Faveira, and Mangue.

The plywood at issue in this case was imported into the United States from Brazil by Stadelman from October 1992 through February 1995. This plywood consists of at least one outer ply of Sumauma, Faveira, or Mangue.

Stadelman asserts that the plywood at issue was classifiable during the relevant time period under subheading 4412.11.20, HTSUS (1992–1995).[5] This subheading provided:

4412 Plywood, veneered panels and similar laminated wood:

Plywood consisting solely of sheets of wood, each ply not exceeding 6 mm in thickness:

4412.11 With at least one outer ply of the following tropical woods: ... *Baboen* ....

....

4412.11.20 Other

(emphasis added). Plywood imported from Brazil and classifiable under subheading 4412.11.20, HTSUS (1992–1995) was eligible for duty-free treatment under the Generalized System of Preferences ("GSP").

Customs classified Stadelman's merchandise under a residual provision, subheading 4412.12.20, HTSUS (1992–1995), which provided:

4412 Plywood, veneered panels and similar laminated wood: Plywood consisting solely of sheets of wood, each ply not exceeding 6 mm in thickness:

4412.12 Other....

....

4412.12.20 Other

Brazilian imports classified under subheading 4412.12.20, HTSUS (1992–1995) were not eligible for GSP treatment. Therefore, in accordance with subheading 4412.12.20, HTSUS (1992 1995), Customs assessed the subject merchandise an eight percent duty.

1. Surinam was formerly known as Dutch Guiana. *The American Heritage Dictionary* 1742 (4th ed.2000).

2. Plywood consists of a panel composed of layers of wood glued together, usually with the grains of adjoining layers at right angles to each other. *The American Heritage Dictionary* at 1352.

3. Throughout this opinion, "VIROLA" refers to the trade term—Virola, while "Virola" refers the botanical genus—Virola.

4. The underlined names in parentheses refer to each wood's corresponding scientific name. These scientific names are based on a hierarchy of biological classification comprising, from broadest to most narrow: kingdom, phylum, class, order, family, genus, and spe-

cies. *McGraw–Hill Concise Encyclopedia of Science and Technology* 1847–48 (2d ed.1989). The first name in parentheses is the wood's genus; the second name in parentheses is the wood's species. "Spp." stands for *species plurales*, which indicates reference to all species of a given genus. The "T." in "T. rhoisoia" appears to be an abbreviation of a genus. The record fails to indicate the full name of the botanical genus identified by the "T." in "T. rhoisoia."

5. From October 1992 through February 1995, the language of the relevant HTSUS provisions remained unchanged. Changes to the 1996 version of heading 4412, HTSUS are not consequential for purposes of this case.

After Customs denied Stadelman's protests filed in accordance with section 514 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1514 (1994), Stadelman appealed to the Court of International Trade. Subsequently, the parties filed cross-motions for summary judgment.

The Court of International Trade initially determined there was no dispute of fact—that is, it recognized that the parties agreed to the description of the merchandise at issue and only disagreed as to its proper classification. Turning to the issue of classification, the court first noted that the merchandise at issue literally fell within the scope of subheading 4412.12.20, HTSUS (1992–1995), which is a residual provision that covers plywood without an outer ply of "Baboen" or any other tropical wood enumerated in subheading 4412.11, HTSUS (1992–1995). Yet, the court indicated that it needed to determine whether the plywood at issue was covered by subheading 4412.11.20, HTSUS (1992–1995), because "[c]lassification of imported merchandise in a residual, or 'basket,' provision is only appropriate when there is no tariff category that covers the merchandise more specifically." *Stadelman,* 83 F.Supp.2d at 1359.

Because the term "Baboen" is not defined in either the HTSUS or its legislative history, the court looked to the term's common meaning for its definition. Recognizing that both parties acknowledged that "Baboen" is not used commercially in the United States, the court consulted standard lexicographic and scientific authorities to decipher the term's common meaning. It determined that lexicographic and scientific authorities indicate that the common meaning of the term "Baboen" is wood of the species *Virola surinamensis,* which is a species within the Virola genus.

The court then discussed the Explanatory Notes to the Harmonized Commodity Description and Coding System ("Explanatory Notes"), which "provide a commentary on the scope of each heading of the Harmonized [Tariff] System and are thus

useful in ascertaining the classification of merchandise under the system." H.R.Rep. No. 100–576, at 549 (1988), *reprinted in* 1988 U.S.C.C.A.N. 1547, 1582. The Explanatory Notes include a note pertaining to Chapter 44, HTSUS that states: "For the purposes of classification in subheadings of headings ... 44.12, certain tropical woods are designated according to the pilot-name recommended by the International Technical Association for Tropical Timber.... The pilot-name is based on the popular name employed in the principal country of production or consumption." Explanatory Notes (1st ed.1986) at 623.

The Annex to the Explanatory Notes ("Annex") provides a list of pilot-names as well as "scientific names" and "local names" that correspond to each pilot-name. Explanatory Notes at 643. In the Annex, six "scientific names" correspond to the pilot-name "Baboen." *Id.* Each scientific name corresponding to the pilot-name "Baboen" is a member of the Virola genus and one of these scientific names is *"[V]irola surinamensis." Id.* The Annex also demarcates eight "local names" that correspond to the pilot-name "Baboen;" one local name corresponding to the pilot-name "Baboen" is "Baboen" in Surinam. *Id.* Notably, the Annex provides no local name in the United States that corresponds to the pilot-name "Baboen." *Id.*

The court recognized that, "[a]lthough the lexicographic and [Explanatory Notes] definitions of '[B]aboen' differ slightly, both appear to limit the scope of the term to species of the genus [V]irola." *Stadelman,* 83 F.Supp.2d at 1361. Because none of the outer plies of the plywood at issue consisted of a species of wood within the Virola genus, the court determined that Customs correctly classified the merchandise at issue because it was not plywood with "at least one outer ply of ... Baboen [or any other enumerated wood]," as required for classification under subheading 4412.11.20, HTSUS (1992–1995). Therefore, the Court of International Trade denied Stadelman's motion for summary

judgment and granted the United States' cross-motion for summary judgment.

## DISCUSSION

### A. Standard of Review

■■■ The grant and denial of summary judgment by the Court of International Trade are matters of law that we review *de novo*. *See Jay v. Secretary of the Dep't of Health and Human Servs.*, 998 F.2d 979, 982 (Fed.Cir.1993) (reviewing grant and denial of summary judgment by the United States Court of Federal Claims *de novo*); *Mita Copystar Am. v. United States*, 21 F.3d 1079, 1082 (Fed.Cir.1994) (reviewing grant of summary judgment by the Court of International Trade *de novo*). A classification of goods by Customs is presumed to be correct. 28 U.S.C. § 2639(a)(1) (1994). Therefore, the party challenging Customs' classification, Stadelman in this case, bears the burden of proving that Customs' classification was incorrect. *Id.* The ultimate question of the proper interpretation of a tariff term is a question of law that we review *de novo*. *Mita Copystar*, 21 F.3d at 1082.

■■■ Proof of commercial designation is a question of fact reviewed under the clearly erroneous standard. *Rohm & Haas Co. v. United States*, 727 F.2d 1095, 1097 (Fed.Cir.1984). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948).

### B. The Proper Meaning of "Baboen"

■■■ To determine the meaning of a tariff classification term, only the term used in the tariff classification may be analyzed. *Cf. Neuman & Schwiers Co., Inc. v. United States*, 24 C.C.P.A. 127, 132 (1936) ("[C]ourts have never broadened the rule [of determining commercial designation] so far as to permit proof of commercial desig-

nation of terms other than the precise terms used in the statute."). "Baboen" is the term designated in the relevant portion of subheading 4412.11.20, HTSUS (1992–1995). VIROLA is not an HTSUS term at issue in this case. Consequently, this court will only assess the meaning of the tariff term "Baboen."

■■■ The first step in properly construing a tariff classification term is to determine whether Congress clearly defined that term in either the HTSUS or its legislative history. *Mita Copystar*, 21 F.3d at 1082. As correctly recognized by the Court of International Trade, neither the HTSUS nor its legislative history defines the term "Baboen."

■■■ When a tariff term is not defined in either the HTSUS or its legislative history, the term's correct meaning is its common or dictionary meaning in the absence of evidence to the contrary. *Rohm & Haas*, 727 F.2d at 1097; *Mita Copystar*, 21 F.3d at 1082. To determine the common meaning of a tariff term, "[a] court may rely upon its own understanding of terms used, and may consult standard lexicographic and scientific authorities...." *Mita Copystar*, 21 F.3d at 1082 (citing *Brookside Veneers, Ltd. v. United States*, 847 F.2d 786, 789 (Fed.Cir.1988)). In addition, "a court may refer to the Explanatory Notes of a tariff subheading, which do not constitute controlling legislative history but nonetheless are intended to clarify the scope of HTSUS subheadings and to offer guidance in interpreting subheadings." *Id.* (citing *Lynteq, Inc. v. United States*, 976 F.2d 693, 699 (Fed.Cir.1992)).

■■■ One who argues that a tariff term should not be construed in accordance with its common or dictionary definition "must prove that 'there is a different commercial meaning in existence which is definite, uniform, and general throughout the trade.'" *Rohm & Haas*, 727 F.2d at 1097 (quoting *Moscahlades Bros. v. United States*, 42 C.C.P.A. 78, 82, 1954 WL 6112 (1954)). The concept of commercial designation

"was intended to apply to cases where the trade designation is so universal and well understood that the Congress, and all the trade, are supposed to have been fully acquainted with the practice at the time the law was enacted." *Id.* (quoting *Jas. Akeroyd & Co. v. United States,* 15 Ct. Cust. 440, 443 (1928)); *see also Two Hundred Chests of Tea, Smith,* 22 U.S. (9 Wheat.) 430, 438, 6 L.Ed. 128 (1824) ("Congress must be understood to use [a tariff term] in its known commercial sense.").

▇▇▇ The Supreme Court, referring to a predecessor tariff statute, has stated: "Whether a particular article were [sic] designated by one name or another, in the country of its origin ... was of no importance in the view of the Legislature." *Two Hundred Chests of Tea,* 22 U.S. at 439. The Court continued: "[The Legislature] applied its attention to description of the articles as they derived their appellations in our own markets, in our domestic as well as our foreign traffic." *Id.* While the Explanatory Notes indicate that the pilot-names delineated in the Annex are "based on the popular name employed in the principal country of production or consumption," Explanatory Notes at 623, the Explanatory Notes are not controlling. *Lynteq,* 976 F.2d at 699. Therefore, in accordance with Supreme Court jurisprudence, in considering the commercial designation of a tariff term, only commercial use of that term in the United States is relevant.

It is uncontroverted that in the United States, the merchandise imported by Stadelman during the relevant time period was known as VIROLA, not "Baboen." Because it is undisputed that the term "Baboen" was not used commercially in the United States during the relevant time period, the Court of International Trade analyzed "Baboen's" common, dictionary definition. Similarly, to properly interpret the tariff term "Baboen" *de novo,* we must

assess lexicons to determine that term's common meaning.

Few standard dictionaries define the term "Baboen." One standard dictionary defines "Baboen" as a "tropical American timber tree (*Myristica surinamensis*) with reddish wood." *Webster's New International Dictionary* 197 (2d ed.1955); *Webster's Third New International Dictionary* 156 (1993). Myristica is a botanical genus within the botanical family, Myristicaceae. *The Concise Oxford Dictionary of Botany,* 268 (Michael Allaby ed., 1992).

A technical dictionary defines "Baboen" as *"Virola surinamensis."* Mabberley, D.J., *The Plant Book: A Portable Dictionary of the Vascular Plants* 71 (2d ed.1997). *Virola surinamensis* is a tropical American timber within the botanical genus, Virola, and is a member of the botanical family, Myristicaceae. *Id.* at 747–48. Therefore, both standard and technical dictionaries indicate that "Baboen" is wood within the Myristicaceae family. The genera comprising Sumauma (*Ceiba pentandra* ), Faveira (*Parkia spp.*), and Mangue (*T.rhoisoia* ) are not members of the Myristicaceae family.[6] *Watson, L. & Dallwitz, M.J., The Families of Flowering Plants: Descriptions, Illustrations, and Information Retrieval,* http://www.keil.ukans.edu/delta/angio/www./myristic.htm (Version: Dec. 14, 2000).

Further, toward the end of the nineteenth century, Myristica was the only recognized genus of the botanical family, Myristicaceae. *E. Warming, A Handbook of Systematic Botany* 393 (1895). The scope of the Myristicaceae family, however, has been broadened to include multiple genera, including the Virola genus. *Hyam, Roger & Pankhurst, Richard, Plants and Their Names: A Concise Dictionary* 332 (1995); *The Concise Oxford Dictionary of Botany* at 268. As recog-

---

**6.** The record indicates that the genus/species encompassing Mangue is *T. rhoisoia.* The Myristicaceae family fails to include any ge-

nus beginning with the letter "T." *Watson & Dallwitz.*

**1050**

nized by the Court of International Trade, it appears that the standard dictionary definition of "Baboen" as *Myristica surinamensis* is based on an outdated scientific definition of the term that was replaced by *Virola surinamensis* when the Virola genus became recognized under the Myristicaceae family. *Stadelman,* 83 F.Supp.2d at 1360. That is, both standard and technical dictionaries indicate that "Baboen" is defined as *Virola surinamensis*—a species within the Virola genus.

This court may also consider the Explanatory Notes and its Annex for non-binding guidance in construing the tariff term "Baboen." *Lynteq,* 976 F.2d at 699. Six "scientific names" correspond to the pilot-name "Baboen" in the Annex: *Virola venezuelensis, Virola bicuhyba, Virola melinonii, Virola surinamensis, Virola mycetis,* and *Virola koschnyi.* Each of these species is a member of the Virola genus, which is within the Myristicaceae family. *Watson & Dallwitz.* No local name in the United States is listed as corresponding to the pilot-name "Baboen."

The Explanatory Notes indicate that the local name in Surinam corresponding to the pilot-name "Baboen" is "Baboen." Explanatory Notes at 643. In considering the common, dictionary definition of an HTSUS term, only common use of that term in the United States is relevant. *Cf. Two Hundred Chests of Tea,* 22 U.S. at 438 ("Whether a particular article were [sic] designated by one name or another, in the country of its origin ... was of no importance in the view of the Legislature.... It applied its attention to the description of articles as they derived their appellations in our own markets....").

Therefore, while standard lexicographic, scientific, and Explanatory Notes definitions of "Baboen" differ slightly, each relevant definition limits the common meaning of "Baboen" to species of the Myristicaceae family and likely to species of the Virola genus. Stadelman's imports, Sumauma, Faveira, and Mangue, are indis-putably not species within the Virola genus and are not members of the Myristicaceae family. *Watson & Dallwitz.* Therefore, Stadelman's imports are not classifiable under subheading 4412.11.20, HTSUS (1992–1995), which covers plywood with "at least one outer ply of ... Baboen [or any other enumerated woods.]"

We have considered Stadelman's other arguments and determined that they lack merit.

## CONCLUSION

For the reasons set forth in this opinion, we affirm the decision of the Court of International Trade, which concluded that Customs properly classified the merchandise at issue under subheading 4412.12.20, HTSUS (1992–1995) and consequently denied Stadelman's motion for summary judgment and granted the United States' cross-motion for summary judgment.

*AFFIRMED.*

## COSTS

Each party shall bear its own costs.