**ANVAL NYBY POWDER AB, Plaintiff–Appellant,**

v.

**The UNITED STATES, Defendant–Appellee.**

**No. 96–1438.**

United States Court of Appeals, Federal Circuit.

Sept. 11, 1998.

Rehearing Denied Oct. 28, 1998.

Before RICH, Circuit Judge, SMITH, Senior Circuit Judge, and NEWMAN, Circuit Judge.

EDWARD S. SMITH, Senior Circuit Judge.

Anval NYBY Powder AB ("Anval") appeals the May 21, 1996 decision of the United States Court of International Trade, Slip op. 95–161, granting summary judgment for the United States and upholding a customs classification of cobalt alloy powders as "unwrought cobalt" under the Harmonized Trade Schedules of the United States ("HTSUS"). We affirm.

*Background*

This case involves the proper tariff classification under the HTSUS of several shipments of cobalt alloys imported from Sweden in 1993 and 1994. Anval imports cobalt alloy powders which are processed and used for plasma arc welding and thermal spraying. The powders are manufactured to produce a spherical shape and uniform size. They are produced by pouring molten cobalt alloy through a nozzle, where it encounters a stream of inert gas. This shapes the liquid cobalt into spherically shaped powders. After the powders undergo a cooling process, they are sorted to discard particles smaller than 53 microns and larger than 250 microns. The powders in question consist of a combination of cobalt, chromium, tungsten, iron and nickel.

It is undisputed that cobalt is a "base metal" as defined in Additional U.S. Note 1 to Section XV and that the materials meet the tariff definitions of "powders"[1] and "alloys."[2] The parties further agree that the powders at issue are properly classifiable under HTSUS subheading 8105, which reads, in pertinent part:

Jerry P. Wiskin, Simons & Wiskin, of New York City, argued for plaintiff–appellant. With him on the brief were Philip Y. Simons and Michelle D. Mancias.

Amy M. Rubin, Trial Attorney, Civil Division, Commercial Litigation Branch, International Trade Field Office, U.S. Department of Justice, of New York City, argued for defendant–appellee. With her on the brief were Frank W. Hunger, Assistant Attorney General and David M. Cohen, Director, U.S. Department of Justice, of Washington, DC; and Joseph I. Liebman, Attorney in Charge, International Trade Field Office. Of counsel on the brief was Myron P. Barlow, Attorney, Office of Assistant Chief Counsel, International Trade Litigation, United States Customs Service, New York City.

1. In accordance with Note 6(b) to Section XV, HTSUS, the cobalt alloy powders qualify as powders for tariff purposes: the maximum size of any powder is less than 1 mm and more than 90 percent of the powders at issue would pass thorough a sieve with an aperture of 1 mm.

2. In accordance with Additional Note to Chapter 81, HTSUS, the content of the respective base metal (cobalt) is less than 99 percent by weight, but not less than any other metallic element.

## CHAPTER 81

### OTHER BASE METALS; CERMETS; ARTICLES THEREOF

\* \* \*

8105    Cobalt mattes and other intermediate products of cobalt metallurgy; cobalt and articles thereof, including waste and scrap:

8105.10    Cobalt mattes and other intermediate products of cobalt metallurgy; unwrought cobalt; waste and scrap; powders:

Unwrought cobalt:

8105.10.30    Alloys

8105.10.60    Other

8105.10.90    Other

The alloys were classified upon liquidation by the United States Customs Service under subheading 8105.10.30 as "unwrought cobalt: alloys" and assessed with a duty at the rate of 5.5% *ad valorem*. The Court of International Trade affirmed Customs' classification of the merchandise. Anval contends that the powders are properly classifiable under subheading 8105.10.90 as "Other."

### *Jurisdiction and Standard of Review*

■ This court has jurisdiction over appeals from final decisions of the United States Court of International Trade pursuant to 28 U.S.C. § 1295(a)(5). We review the Court of International Trade's grant of summary judgment and interpretation of HTSUS subheadings completely and independently. *See Medline Indus., Inc. v. United States*, 62 F.3d 1407, 1408 (Fed.Cir.1995); *Mita Copystar America v. United States*, 21 F.3d 1079, 1082 (Fed.Cir.1994).

### *Discussion*

■ The Court of International Trade determined that the imported merchandise is similar to the exemplars of unwrought metal listed in Additional U.S. Note 2 and is, therefore classifiable under subheading 8105.10.30. Anval contends that this classification renders the term "powders" in superior subheading 8105.10 meaningless.

■ Determining the proper classification for imported merchandise is a two-step procedure. We must: "(1) ascertain[ ] the proper meaning of specific terms in the tariff provision; and (2) determin[e] whether the merchandise at issue comes within the description of such terms as properly construed." *Sports Graphics, Inc. v. United States*, 24 F.3d 1390, 1391 (Fed.Cir.1994).

It is undisputed that the powders at issue are properly classified under subheading 8105.10, HTSUS: "Cobalt mattes and other intermediate products of cobalt metallurgy; unwrought cobalt; waste and scrap; powders." The disagreement between the parties centers on the proper classification under the inferior subheading, that is, whether the powders should be classified as "unwrought cobalt: alloys" under 8105.10.30 or "other" under 8105.10.90.

Additional U.S. Note 2 to Section XV of the HTSUS defines the term "unwrought" as follows:

For the purposes of this section, the term "unwrought" refers to metal, whether or not refined, in the form of ingots, blocks, lumps, billets, cakes, slabs, pigs, cathodes, anodes, briquettes, cubes, sticks, grains, sponge, pellets, flattened pellets, rounds, rondelles, shot and similar manufactured primary forms, but does not cover rolled, forged, drawn or extruded products, tubular products, or cast or sintered forms which have been machined or processed otherwise than by simple trimming, scalping or descaling.

First, the note lists some nineteen forms of unwrought materials. Powders are not expressly covered in this list, so we must determine if powder is a "similar manufactured primary form." The trial court found that the powders at issue possess "the common characteristic or unifying criterion of ingots, blocks, lumps, billets, etc. that make them 'manufactured primary forms.'" We agree.

The metal powders are physically related to forms such as grains, pellets & shot. Further, briquettes are made of compressed powder. Moreover, each of the listed forms share one distinguishing feature—each must undergo additional processing in order to be able to be used in an application that will

result in a finished product. These powders are used in thermal spraying and arc welding. As such, they must be further processed to be used in a liquid form.

The Note further defines unwrought forms to exclude "cast or sintered forms which have been machined or processed otherwise than by simple trimming, scalping, or descaling." Anval contends that the sorting procedure is a further process that would exclude these powders from the definition of "unwrought."

The parties agree that the powders are "cast," as they are manufactured by a continuous casting process. The question remains, therefore, as to whether these powders are subjected to further processing other than "simple trimming, scalping or descaling." After the powders are cast and cooled, they are initially screened by a screening table with two parallel screens. The top screen has a mesh size of 250 microns and the bottom screen has a mesh size of 53 microns. In sifting, therefore, particles of the desired size—between 53 and 250 microns—collect between the two screens. These powders are then passed through the parallel screens a second time.

Anval argues that this screening procedure changes the entire nature of the product and that this screening process is significantly more extensive than simple trimming, scalping, or descaling. We disagree.

The sorting of the particles does not change the nature of the powders. This procedure merely screens out particles of acceptable sizes. Surely makers of shot, billets, ingots and other named forms employ similar quality control measures to standardize the size of their product. The screening procedure is not a further process that changes the nature of the cast metal powders.

Because the powders at issue are a "similar manufactured form" and they are not further processed, they are properly classified as "unwrought." As such, the powders were properly classified by Customs under HTSUS 8105.10.30 as "unwrought cobalt: al-

loys." The decision of the Court of International Trade is affirmed