**Slip Op. 00-19**

# UNITED STATES COURT OF INTERNATIONAL TRADE

_____

Expancel, Inc.,                                          **:**

         Plaintiff,                                **:**

                              **Court No. 96-06-01519**

                        **:**        **Before: Barzilay, Judge**

           v.                                       **:**

The United States,                                      **:**

         Defendant.                             **:**
_____**:**

[Plaintiff's Motion for Summary Judgment denied, Defendant's Cross-Motion for Summary Judgment granted.]

                                 Decided: February 18, 2000.

Sandler, Travis & Rosenberg, P.A. (Paul G. Giguère) for Plaintiff.

David W. Ogden, Acting Assistant Attorney General; Joseph I. Liebman, Attorney-in-Charge, International Trade Field Office; Commercial Litigation Branch, Civil Division, Department of Justice (John J. Mahon); Edward N. Maurer, Office of Assistant Chief Counsel, International Trade Litigation, Customs Service, of counsel, for Defendant.

## MEMORANDUM

**BARZILAY, JUDGE:**

## I. INTRODUCTION

The issue before the Court in this case is whether microspheres, the product at issue, are acrylic plastics in primary form such that classification in subheading 3906.90.20 of the Harmonized Tariff Schedule of the United States ("HTSUS") by the U.S. Customs Service is correct. The Court exercises

jurisdiction pursuant to 28 U.S.C. § 1581(a) (1994). For the reasons that follow, the Court finds that the Defendant's classification is correct.

## II. BACKGROUND

The product at issue consists of a spherical plastic shell that encapsulates isobutane gas. The microsphere is extremely small, with the diameter ranging from 10-17 microns. Without the aid of a microscope the product appears to be dust. When heat is applied, the isobutane increases the pressure on the plastic shell, softening and expanding it up to 40 times its original volume.

Microspheres may be used as blowing agents, although they are not typical chemical blowing agents, and as light weight fillers.[1] As blowing agents microspheres may be added to printing inks (providing three dimensional patterns on paper), to underbody coatings and sealants (providing controlled expansion and uniform distribution of the cells), to extruding or injection molding[2] (providing better predictability and stability than traditional blowing agents), to shoe soles (providing less weight and greater elasticity to the soles) to paper and board (providing increased thickness and stiffness), and to coating and spraying and impregnation of woven and nonwoven substrates (providing bulk, thickness and resilience).

As a light weight filler microspheres may be used in polyester putties, fine grained spackling compounds, paints, thermosets and cultured marble to reduce density and weight. Microspheres may be used in the cable industry as a low weight additive to liquid petrolatum, which fills the voids between the conductors in the cable, providing varying advantages depending upon the amount by weight that is added

---

[1] A blowing agent is "[a] chemical added to plastics and rubbers that generates inert gases on heating, causing the resin to assume a cellular structure." MCGRAW-HILL DICTIONARY OF SCIENTIFIC AND TECHNICAL TERMS 232 (4th ed. 1989).

[2] For purposes of uniformity, the Court uses the American spelling throughout the opinion.

and whether added in expanded or unexpanded form.

Customs classified the microspheres under 3906.90.20 HTSUS as "Acrylic polymers in primary forms: . . . Other: . . . Other: . . . Plastics" at a 6.3% duty rate. Plaintiff contends that this classification is incorrect because the statutory phrase "primary forms" does not encompass plastic spheres that contain isobutane, *i.e.*, microspheres. Neither party contends that the prior decision found in *Expancel, Inc. v United States*, 20 CIT 785 (1996), is controlling since the present arguments were not advanced, although the Defendant urges the court to follow that decision.[3]

### III. STANDARD OF REVIEW

The parties have cross moved for summary judgment, which is appropriate if "there is no genuine issue as to any material fact . . . ." USCIT R. 56(d). The parties agree on the physical characteristics and certain other details of the imported merchandise, but dispute the classification. Based on its review of the undisputed facts, the Court agrees that this case is appropriately resolved through summary judgment.

The Court is then left with a purely legal question involving the meaning and scope of the tariff provision and whether it includes the imported merchandise. *See National Advanced Systems v. United States*, 26 F.3d 1107, 1109 (Fed. Cir. 1994). Although there is a statutory presumption of correctness for Customs decisions, 28 U.S.C. § 2639(a)(1), when the Court is presented with a question of law in a proper motion for summary judgment, that presumption does not apply. *Blakley Corp. v. United States*, 22 CIT ___, 15 F. Supp.2d 865, 869 (1998), (citing *Universal Electronics, Inc. v. United States*, 112 F.3d 488, 492 (Fed. Cir. 1997); *see also Goodman Manufacturing L.P. v. United States*, 69 F.3d 505,

---

[3] Of course, in classification cases res judicata principles do not apply, unless the entries at issue are identical. *See United States v. Stone & Downer Co.*, 274 U.S. 225, 235-37 (1927).

508 (Fed. Cir. 1995) ("Because there was no factual dispute between the parties, the presumption of correctness is not relevant.")). Accordingly, the Court proceeds to determine the correct classification of the merchandise.

## IV. DISCUSSION

Plaintiff argues that the proper classification of its microspheres is under 3926.90.98 HTSUS providing for "Other articles of plastics and articles of other materials of headings 3901 to 3914: . . . Other: . . . Other" at a 5.3% duty rate. Plaintiff contends that this basket provision is appropriate because it more accurately captures the microspheres since 3906.90.20 HTSUS is limited to acrylic polymers in primary forms.

In a classification case the court begins its analysis by applying the General Rules of Interpretation ("GRI"). GRI 1 states:

> The table of contents, alphabetical index, and titles of sections, chapters and sub-chapters are provided for ease of reference only; for legal purposes, classification shall be determined according to the terms of the headings and any relative section or chapter notes and, provided such headings or notes do not otherwise require, according to the following provisions[] . . . .

Heading 3906 covers "Acrylic polymers in primary forms." Subheading 3906.90.20 describes other acrylic polymers in primary form of plastic. That the microspheres are an acrylic polymer of plastic is not disputed. Rather, Plaintiff contends that microspheres are not in primary form as that term is defined.

Chapter note 6 explains that "[i]n headings 3901 to 3914, the expression 'primary forms' applies only to the following forms: (a) Liquids and pastes, including dispersions (emulsions and suspensions) and solutions; (b) Blocks of irregular shape, lumps, powders (including molding powders), granules, flakes and

similar bulk forms." Note 6 to Chapter 39, HTSUS. Plaintiff explains that although the microspheres appear to be a powder, in fact they are not and therefore do not fall within the definition of primary forms. Defendant contends that the microspheres are like a powder and that the statute provides for similar bulk forms, thereby capturing the microspheres within the definition of primary form.

"When a tariff term is not defined in either the HTSUS or its legislative history, the term's correct meaning is its common meaning." *Mita Copystar America v. United States*, 21 F.3d 1079, 1082 (Fed. Cir. 1994) (citing *Lynteq, Inc. v. United States*, 976 F.2d 693, 697 (Fed. Cir. 1992)). To ascertain the common meaning the "court may rely upon its own understanding of terms used, and may consult lexicographic and scientific authorities . . . ." *Id.* (citing *Brookside Veneers, Ltd. v. United States*, 847 F.2d 786, 789 (Fed Cir. 1988).

*A. Microspheres Are Not Powders.*

Defendant attempts to argue that the definition of powder does not exclude products such as Plaintiff's microspheres. Defendant cites the definition of powder as "[a] loose grouping or aggregation of solid particles, usually smaller than 1000 micrometers." MCGRAW-HILL DICTIONARY OF SCIENTIFIC AND TECHNICAL TERMS 1478 (4th ed. 1989).[4] Defendant offers a second definition of powder as "[a]ny solid matter in a state of minute subdivision; the mass of dry impalpable particles or granules produced by grinding, crushing, or disintegration of any solid substance." 12 OXFORD ENGLISH DICTIONARY 254 (2d ed. 1989). While Plaintiff's products certainly are smaller than 1000 microns they are not solid.

Plaintiff responds with definitions of the term solid as something "without an internal cavity."

---

[4] Micrometer and microns are interchangeable terms. *See* MCGRAW-HILL DICTIONARY OF SCIENTIFIC AND TECHNICAL TERMS 1196 (4th ed. 1989)

WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY (1991). Additionally, Plaintiff cites the definition of

solids as follows: "1. a. Free from empty spaces, cavities, interstices, etc.; having the interior completely

filled in or up. Opposed to hollow. . . . 3. a. Of material substances: Of a dense or massive consistency;

composed of particles which are firmly and continuously coherent; hard and compact." 15 OXFORD

ENGLISH DICTIONARY 969-70 (2d ed. 1989). It is evident that the microspheres contain a cavity which

is filled with a substance, isobutane, having neither a dense nor a massive consistency. Since the

microspheres are not solids, they do not satisfy the definition of powder.

### B. Microspheres Are Similar Bulk Forms.

Defendant argues that even if the microspheres are not powders, they are still primary forms

because they are similar bulk forms. Plaintiff does not dispute that the microspheres are traded in bulk

form. Thus the question becomes whether microspheres are in primary form because they are similar to

blocks of irregular shape, lumps, powders, including molding powders, granules or flakes.[5] Similar is

---

[5] Plaintiff cites *Anval Nyby Powder AB v. United States*, 157 F.3d 846 (Fed. Cir. 1998) as support for the proposition that its product does not fall within the definition of primary forms. In *Anval*, the court looked to the unifying characteristics of nineteen items defined as unwrought in Additional U.S. Note 2 to Section XV of the HTSUS. *See id.* at 848. The court found that the unifying criterion of the items listed as unwrought was that they did not undergo further processing. *See id.* at 848-49. However, the court found that the product was a similar manufactured form, even though not specifically listed, because it did not undergo further processing. *See id.* at 849.

Plaintiff claims that in the instance case, anything falling within the definition of primary form must undergo further processing, thus microspheres are not in similar bulk form because they are finished products. The Court does not agree that the unifying characteristic at issue in this case involves the stage of processing. Rather, the unifying characteristic found in the Explanatory Notes appears to be that the addition of a primary form product changes the properties of that to which it is added in some desirable manner. *See* discussion *infra*. Even if this were not the case, Defendant has pointed to a number of products that do not undergo further processing but are considered in primary form. *See Def.'s Mem. in Supp. of Def.'s Cross. Mot. for Summ. J. and in Response to Pl.'s Mot. for Summ. J.* at 12.

defined as "[h]aving a marked resemblance or likeness; of a like nature or kind." 15 OXFORD ENGLISH DICTIONARY 490 (2d ed. 1989). Another source gives the definition of similar as "[r]elated in appearance or nature; alike though not identical." AMERICAN HERITAGE DICTIONARY 1141 (2d College ed. 1991).

Both parties cite to the Explanatory Notes to the Harmonized Commodity Description and Coding System (ENs), which are not controlling but nevertheless provide guidance in interpreting the headings and subheadings of the tariff. *See Mita Copystar America*, 21 F.3d at 1082. Of particular interest is the description of powder, granules and flakes:

> In these forms they are employed for molding, for the manufacture of varnishes, glues, etc., and as thickeners, flocculants, etc. They may consist of the unplasticised materials which become plastic in the molding and curing process, or of materials to which plasticisers have been added; these materials may incorporate fillers (e.g. wood flour, cellulose, textile fibres, mineral substances, starch), colouring matter or other substances cited in item (1) above. Powders may be used, for example, to coat objects by the application of heat with or without static electricity.

ENs at 597 (2d ed. 1996).

Plaintiff claims that its product is unique since it is already plastic, does not contain fillers, is not used for the manufacture of varnish, although it could be added to varnish, is not a thickener, and cannot be used as a coating. Defendant contends that the Explanatory Note is expansive evidenced by its repeated use of terms such as for example, and et cetera. The Court agrees with Defendant and finds that the EN is illustrative of the similarity of microspheres to powders, granules and flakes.

Plaintiff's product literature notes that it may be used as a blowing agent, a weight reducer and a property improver. *See Pl.'s Mot. for Summ. J.* at Ex. B-E ("*Pl.'s Br.*"). As discussed above, the purpose of adding the microspheres varies from one product to the next. In general, microspheres provide controlled expansion, uniformity of cell size, even distribution, bulk, resilience and function very well as light

weight fillers. *See Pl.'s Br.* at 11, Ex. B-E.

While microspheres are not employed for molding, they may be added to extruding or injection molding or to reaction injection molding. *See Pl.'s Br.* at C. Further, microspheres are not employed for the manufacture of varnishes although they may be added to them, *see Pl.'s Br.* at 8, and are added to paint. *See Pl.'s Br.* at Ex. D. Plaintiff states that microspheres are not used as thickeners, but rather are added to decrease the density of products. However, the EN lists thickeners with flocculants in a nonexclusive manner. A flocculant, or flocculating agent, is "[a] reagent added to a dispersion of solids in a liquid to bring together the fine particles to form flocs." MCGRAW-HILL DICTIONARY OF SCIENTIFIC AND TECHNICAL TERMS 735 (4th ed. 1989). Flocs are "[s]mall masses formed in a fluid through coagulation, agglomeration, or biochemical reaction of fine suspended particles." MCGRAW-HILL DICTIONARY OF SCIENTIFIC AND TECHNICAL TERMS 735 (4th ed. 1989). What appears to be common to the list is not a particular result, *i.e.*, thickening or flocculation, rather it is the introduction of the powder, granule or flake into something else causing a change in its properties. The materials before the Court all demonstrate that microspheres when added to another product change its properties, whether by decreasing its density or otherwise.

Further, Plaintiff maintains that isobutane is not a filler, but rather an essential component of the microsphere. If the isobutane were to escape the microsphere could only be described as acrylic plastic waste. Plaintiff contends that fillers "add bulk or strength, but they otherwise present no unique characteristics to the plastic article." *Pl.'s Br.* at 8. Thus, the isobutane is not just a filler, it is an essential component. Yet, isobutane functions similarly to a filler by adding strength. By Plaintiff's definition, the isobutane's function is different from other fillers added to primary forms only by degree. Without

isobutane, the microsphere will collapse, other plastics in primary form will retain their shape but have decreased strength or bulk. The EN also notes that materials in Headings 3901-3914 may contain "fillers . . . intended to give the finished products special physical properties or other desirable characteristics." EN at 596. (2d ed. 1996). Isobutane may be essential, in that without it a microsphere does not exist, but its presence undeniably gives the microsphere special physical properties and other desirable characteristics.

Accordingly, the microspheres are captured by the phrase in Note 6 to Chapter 39 "similar bulk form" rendering them within the definition of primary forms. Since application of GRI 1 resolves the correct classification of the merchandise, resort to the remaining GRIs is unnecessary. Defendant correctly classified the microspheres under subheading 3906.90.20 HTSUS.

## V. CONCLUSION

For the foregoing reasons, the Court finds that the correct classification of Plaintiff's microspheres is in subheading 3906.90.20 HTSUS. Judgment will enter accordingly.

Dated: _____                    _____
          New York, NY                                                      Judith M. Barzilay
                                                                                      Judge